No. 29,475.

A. A. Meyer, *Appellant*, v. Clement L. Wilson, *Appellee*.

(293 Pac. 738.)

Opinion filed December 6, 1930.

*J. Graham Campbell*, of Wichita, *W. M. Glenn*, of Tribune, and *C. L. Kagey*, of Beloit, for the appellant.

*C. A. Spencer* and *J. H. Jenson*, both of Oakley, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: On August 25, 1927, A. A. Meyer brought an action asking damages from Clement L. Wilson, to the amount of $6,600, for misrepresentations and fraud in the sale of thirty shares of stock of the Kansas State Bank of Tribune, at the price of $120 a share. Plaintiff alleged the stock was purchased on the representations of defendant that the bank was solvent and in good financial condition; that a considerable number of notes and securities in the

bank were good, worth every dollar represented by them; that these and other assets of the bank constituted a surplus of at least five per cent above the capital stock; that the bank was in no trouble of any kind and that no litigation was pending against it. Plaintiff further alleged that, relying on these representations, the purchase was made. He then alleges that a number of the notes and securities mentioned were of little or no value; that one of the items listed as assets of the bank, $1,224, was a personal transaction and was later removed from the bank on payment of $1,000. That two other items, one of $1,200 and another of $1,400, had been criticized by the bank commissioner, who had demanded additional security, which had been listed by defendant as worth their face value, whereas they were in fact worthless. That instead of there being no litigation pending against the bank as represented, there was one suit pending against the bank for $21,191 and another for $1,890.95. It was alleged further that the bank was in bad condition, and by reason thereof the stock purchased was not worth half of what it was sold for, and also that plaintiff faces a double liability on the stock purchased. It was further alleged that the defendant put into the bank a note of $900 for his own benefit and which was known by him to be worthless. That he put in a house and lot at a value of $550 for which he had paid $150, with a worthless or uncertain title. That the bank was closed on April 16, 1927, and passed into the hands of a receiver who at once made an assessment of 100 per cent on the stock of the bank, and he believes that the conditions are such that he will be required to pay the assessment in full. In his allegations plaintiff offered to turn over everything he had received in the sale, including the stock certificates. The prayer of the petition was that judgment be given against him for $3,600, the amount paid for the stock, and $3,000 for the 100 per cent assessment upon the stock purchased. Later plaintiff was required to amend the petition in respect to whether the negotiations for the sale of stock were oral or written, and in response to the motion he averred that the negotiations were mostly oral, but that a contract in writing was made which he set forth, and stated they were made orally prior to the transfer of the stock. He also amended by setting forth a list of the notes alleged to be of no value, thirty-two in number, the face value of which was $12,692.05, and alleged that these are the same notes that were in the bank when the sale was made by defendant. The amendment included the allegation that plaintiff had been sued

on his double liability on the stock, and judgment for $3,000 had been entered against him with the interest thereon under the double liability law of the state. The written contract of sale was set forth, and included in it is a recital of a sale having been made subject to the following conditions: that the purchase price was $120 per share, amounting to $3,600, $600 of which was paid at once; $2,400 was to be paid when the transfer of stock was made, and $600 on September 1, 1925, for which a note was to be given. A provision of the contract pertinent to this controversy recited:

"That the first party [Wilson] represents all books, records and accounts of the said Kansas State Bank, to be true and correct to the best of his knowledge and agrees to adjust any errors that may be found to have existed at the time of the transfer of said stock to second party (Meyer). First party further represents that all notes held by the said bank at the time of the transfer of said stock to said second party are correct in amount, genuine as to signature of maker, and to the best of his knowledge collectible."

There was a further provision, in substance, that the first party agrees to resign two insurance agencies to second party, who would conduct the same in connection with the bank, except that no loans were to be made without the consent of the board of directors of the bank. There was another provision with reference to forfeitures in case the $600 payment was not made by the plaintiff, and also a forfeiture if Wilson failed to transfer the stock sold. Another provision is that the second party should receive a salary of $150 per month as cashier of the bank for at least a year, and that if it became necessary to employ any help in the bank the second party would take care of that expense out of his salary.

On motion of defendant, the plaintiff was required to make good the tender mentioned, and not having complied with the requirement the plaintiff, on April 25, 1929, dismissed the action without prejudice. On August 6, 1929, the present action was begun, and the petition therein contained substantially the same facts as were alleged in the original petition, except that no reference was made to a tender of the certificates. The prayer asked for damages the same as in the first petition, except that additions were made to the demand, presumably because of accruing interest. To the second petition the defendant demurred for the reason that the petition did not state a cause of action and that the causes of action set forth were barred by the statute of limitations. The demurrer was sustained, but the grounds upon which the ruling was based were not

stated. The ground that the action was barred by the statute of limitations is based upon the contention that the first action was for rescission while the second was for the recovery of damages; that these are inconsistent remedies, and that the filing of the first action, which was dismissed without prejudice, did not toll the statute. The first petition was filed August 25, 1927, and dismissed on April 25, 1929. The second was filed on August 6, 1929, much less than a year after the dismissal of the first. The statute applicable to the matter of limitation provides that:

"If any action be commenced within due time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or, if he die, and the cause of action survive, his representatives, may commence a new action within one year after the reversal or failure." (R. S. 60-311.)

A dismissal without prejudice must be regarded as a failure otherwise than upon the merits. (*McWhirt v. McKee*, 6 Kan. 412.) The new action must, of course, be substantially the same as the action dismissed. Defendant contends that the actions are not the same. The first, he argues, was for rescission and the present one for the recovery of damages. Both relate, as we have seen, to the same transaction, charge the same frauds, and both ask specifically for the recovery of damages. True, in the first a tender of the return of the certificates was mentioned, and whatever the purpose of the tender may have been the plaintiff asked only for damages in both petitions. We think the actions were substantially the same, and if a cause of action is stated in the present action it is not barred by the statute of limitations.

Defendant contends that notwithstanding the serious charges of misrepresentation and fraud, which were stated in the petition, only those named in the contract can be considered. Those included in the writing as to the quality and value of its assets were quoted above. They consisted of the representation that the records and accounts of the bank were true and correct, and that the notes held by the bank were correct in amount, genuine as to signature, and to the best of his knowledge collectible.

It is argued by defendant that the averments in the petition as to the fraudulent representations of defendant, other than those specified in the contract, are without effect, as the presumption is that when the parties committed their engagements to writing it

included the entire agreements and that oral proof to the contrary may not be admitted. There can be no contention as to the application of the general rule where no fraud is alleged. A contract, however, is of itself of no force if it is procured by fraud and is not binding on the defrauded party. The petition sets out fraudulent representations upon which plaintiff states that he relied and by which he was induced to enter into the contract. There are exceptions to the rule that where there is a written contract its terms may not be added to or changed by oral evidence. One of these is where the contract is void by reason of fraud in procuring it. In 1 Williston on Sales, 2d ed., p. 417, § 215, the following is said:

"The basis of the parol evidence rule is that it must be assumed that when parties contracted in regard to a certain matter and reduced their agreement to writing, the writing expressed their whole agreement in regard to that matter. This reason is obviously inapplicable to a situation where an obligation is imposed by law irrespective of any intention to contract. Such is frequently the case with warranties. Therefore, if a buyer is induced by positive statements of fact to enter into a written contract for the purchase of goods, there seems no reason why these statements should not be admitted in evidence. False and fraudulent statements inducing the formation of a written contract may, of course, be proved . . ."

Numerous authorities are cited by the author in support of the text quoted. We think the present case falls within that rule. The pleading is somewhat verbose and contains allegations which may not be proven. Those which are mere general expressions of opinion, in the nature of puffing, as that the bank was doing good business, was in fine financial condition, or as to matters expressly stipulated in the contract, are of this class, but it does not appear that defendant asked to have them stricken out. However, the false statements to the effect that the bank was actually solvent, and had a surplus of at least five per cent above the par value of the capital stock, and also statements that the assets of the bank including the notes and securities specifically pointed out were of face value, were competent and if established by proof would justify a recovery. Then, again, the representation that the bank was not involved in litigation, when plaintiff has alleged that as a matter of fact the bank was involved in litigation, which could not be other than hurtful, is therefore, we think, actionable. Aside from these considerations, the contract provision in which the defendant represented that the notes held by the bank were to the best of his

knowledge collectible, warranted proof that the statement was false, and also that he at the time knew that many of them were valueless and uncollectible.

We conclude that the petition stated a cause of action, and therefore the judgment is reversed and the cause remanded for further proceedings.

HARVEY, J., dissenting.