CHADWICK, APPELLANT, *v.* BARBA LOU, INC., APPELLEE.

[Cite as Chadwick v. Barba Lou, Inc. (1982), 69 Ohio St. 2d 222.]

(No. 81-344—Decided February 17, 1982.)

224

*Mr. Arthur H. Thomas, Jr.,* and *Mr. Michael D. Allen,* for appellant.

*Messrs. Crabbe, Brown, Jones, Potts & Schmidt, Mr. William L. Schmidt* and *Mr. David J. Richards,* for appellee.

SWEENEY, J.

I.

This action was filed more than two years from the date plaintiff's cause of action accrued. Thus it is barred by R. C. 2305.10, the statute of limitations, unless it comes within the scope of R. C. 2305.19, the savings statute, or some other exception. R. C. 2305.19 provides, in part:

"In an action commenced * * * *if the plaintiff fails otherwise than upon the merits,* and the time limited for the commencement of such action at the date of * * * failure has expired, the plaintiff * * * may commence a new action within one year after such date. * * * " (Emphasis added.)

Appellant herein contends that the dismissal of his prior action constituted a "fail[ure] otherwise than upon the merits" as that phrase is used in the statute, and that the instant action was timely filed under the authority of R. C. 2305.19.

Since the adoption of the Rules of Civil Procedure, the dismissal of actions is governed by Civ. R. 41. Civ. R. 41(A)[1]

---

[1] Civ. R. 41 provides:

"(A) Voluntary dismissal: effect thereof.

"(1) By plaintiff; by stipulation. Subject to the provisions of Rule 23(E) and Rule 66; an action may be dismissed by the plaintiff without order of court (a) by filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by the defendant or (b) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court, an action based on or including the same claim.

governs dismissals initiated by the plaintiff.[2] Under Civ. R. 41(A)(1)(a) the plaintiff may, in the absence of a dependent counterclaim, unilaterally dismiss his action before the commencement of trial simply by filing a notice of dismissal. Civ. R. 41(A)(1)(b) authorizes the dismissal of actions by stipulation of all parties. A dismissal under Civ. R. 41(A)(1), whether by notice or stipulation, is without prejudice "[u]nless otherwise stated in the notice of dismissal or stipulation," however, "a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court, an action based on or including the same claim." Civ. R. 41(A)(2) provides for the dismissal of actions by order of the court upon plaintiff's motion to dismiss. Such a dismissal is subject to "such terms and conditions as the court deems proper," and is, by express provision of the rule, a dismissal without prejudice unless otherwise specified in the court's order.

The entry dismissing plaintiff-appellant's first action does not expressly designate the subdivision of Civ. R. 41 pursuant to which it was made. However, it is apparent that the dismissal was made under the authority of Civ. R. 41(A)(2). The entry expressly states that the dismissal was made "[u]pon motion of the plaintiff." It was signed by the judge and constituted an order of the court.[3]

---

"(2) By order of court. Except as provided in subsection (1) an action shall not be dismissed at the plaintiff's instance except upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in, the order, a dismissal under this paragraph is without prejudice."

[2] See Staff Note to Civ. R. 41(B): " * * * An involuntary dismissal is initiated by the defendant or by the court, voluntary dismissals being limited to the initiative of the plaintiff." Although Civ. R. 41(A) dismissals frequently are denominated "voluntary" dismissals, a dismissal entered pursuant to Civ. R. 41(A)(2), although initiated by the plaintiff's motion, may fall short of being "voluntarily" made, as that word is commonly understood, due to the court's supervision of its terms. See Webster's New Collegiate Dictionary: *"voluntary 1:* proceeding from the will or from one's own choice or consent *2: unconstrained by interference* * * * ." (Emphasis added.)

[3] Although counsel for both the plaintiff and the defendant affixed their signatures in approval of the entry, the document would have been without legal effect absent the judge's signature. The appearance of the signatures of counsel in approval does not

As noted *supra,* such a Civ. R. 41(A)(2) dismissal is without prejudice unless otherwise specified in the order. In this instance the order *expressly* provided that the dismissal was without prejudice. What effect, if any, does the fact that the dismissal was "without prejudice" have in determining whether it constituted a failure otherwise than upon the merits so as to bring the subsequently filed action within the scope of the savings statute?

The Staff Note to Civ. R. 41 provides some guidance. It reads, in part:

" * * * [Civ. R. 41] provides that voluntary or involuntary dismissal, depending upon the particular circumstances, may be with or without prejudice. *If the dismissal is with prejudice, the dismissed action in effect has been adjudicated upon the merits,* and an action based on or including the same claim may not be retried." (Emphasis added.)

Thus, an action dismissed "with prejudice" is vulnerable to the defense of *res judicata.* Neither the Rule itself nor the Staff Note pertinent thereto, however, expressly states the converse of the proposition, *i.e.,* whether a dismissal *without* prejudice constitutes an action terminated "otherwise than upon the merits."

We find that this latter proposition is true. That dismissal "without prejudice" is one "otherwise than upon the merits" not only accords with what can reasonably be assumed to have been the understanding of the court and the parties, but also is consistent with the interpretation given the phrase generally.[4]

Indeed, in *Siegfried* v. *Railroad Co.* (1893), 50 Ohio St. 294, the seminal Ohio case holding that a truly voluntary dismissal does not constitute a "fail[ure] otherwise than upon the merits" for purposes of the savings statute, the court assumed *sub silentio* that a voluntary dismissal is "otherwise

---

justify a conclusion that the dismissal was made by notice (Civ. R. 41[A][1][a] ) or by stipulation of the parties (Civ. R. 41[A][1][b] ).

[4] In defining the phrase "without prejudice" Black's Law Dictionary (5 Ed.) states that when included in an order the words "show that the judicial act is not intended to be *res judicata* of the merits of the controversy." See, also, *Palmer* v. *Rucker* (1972), 289 Ala. 496, 503, 268 So. 2d 773. ("The words 'without prejudice' in their general adaptation, when used in a decree, mean that there is no decision of the controversy on its merits, * * * "); Recent Cases, 29 Univ. of Cincinnati L. Rev. 516. ("A dismissal without prejudice is not a disposition upon the merits.")

than upon the merits." The issue in that case centered solely upon whether a voluntary, unilateral withdrawal by the plaintiff constituted a "failure" as that word was used in R. S. 4991 (predecessor of R. C. 2305.19). In *Siegfried* the court answered the question in the negative, holding that a voluntary dismissal is not a "failure" for purposes of R. S. 4991. The court reasoned " * * * [t]o fail, implies an effort or purpose to succeed. One cannot, properly, be said to fail in anything he does not undertake, nor, in an undertaking which he voluntarily abandons."

In a subsequent case, *Cero Realty Corp.* v. *American Mfgs. Mutual Ins. Co.* (1960), 171 Ohio St. 82, the court modified the *Siegfried* rule. The court held there that not all dismissals initiated by the plaintiff, are necessarily "voluntary" as that term was used in the *Siegfried* case. In *Cero Realty*, the plaintiff dismissed its action after its petition had twice been struck down on the defendants' demurrers. Upon refiling, the plaintiff asserted that its otherwise time-barred claims came within the savings statute. The court held that R. C. 2305.19 is to be "given a liberal construction to permit the decision of cases upon their merits rather than upon mere technicalities of procedure." Although the plaintiff elected to dismiss his cause, that election was not held to be "voluntary" because it was prompted by adverse court action. Because the dismissal was not truly voluntary, as had been the situation in *Siegfried* v. *Railroad Co., supra,* the dismissal was found to be a "failure" for purposes of R. C. 2305.19.[5]

The most recent statement by this court pertaining to the issue at hand was made in *Beckner* v. *Stover* (1969), 18 Ohio St. 2d 36. The syllabus to that case reads:

"A plaintiff has not 'failed otherwise than upon the merits,' within the meaning of Section 2305.19, Revised Code, where he has voluntarily dismissed his timely commenced action without prejudice in response to adverse rulings of the

---

[5] Although ostensibly upholding *Siegfried,* the *Cero Realty Corp.* court suggested in *dicta* that *all* voluntary dismissals should be afforded the benefits of the savings statute. As a result, at least one court thereafter concluded that *any* voluntary nonsuit or dismissal under R. C. 2323.05(A) qualified as one which "fails" within the meaning of the savings statute. *Beckner* v. *Stover* (1968), 13 Ohio App. 2d 222.

trial court, unless those rulings will prevent a trial of the cause upon its merits. * * * "[6]

Notably, all three of the foregoing cases were decided prior to the adoption of the Rules of Civil Procedure. We believe that the line of cases beginning with *Siegfried* v. *Railroad Co., supra,* should be re-examined in light of those rules.

Prior to the adoption of the Civil Rules, dismissals were governed by statute. Under R. C. 2323.05 a plaintiff could dismiss his action at any time prior to its final submission to the jury or court. The court could order a dismissal in response to certain types of plaintiff misconduct. However, under this pre-Rule statutory procedure, these dismissals, whether voluntarily initiated by the plaintiff or resulting from the motion of the defendant or the court, could *only* be made without prejudice. Similarly, under pre-Rule practice there was no limit to the number of voluntary dismissals a plaintiff might make. Under these circumstances the possibility of plaintiff abuse existed. A plaintiff could harass a defendant by repeatedly filing actions based on the same claim, each time voluntarily dismissing the case just prior to adjudication. A review of the pre-Rules cases justifies the conclusion that the phrase "fails otherwise than upon the merits" in R. C. 2305.19 was narrowly construed in order to provide a limit to an otherwise unlimited possibility of abuse under code procedure.[7] That this policy consideration was a primary justification for the court's holding is most overtly disclosed in *Beckner* v. *Stover, supra,*

---

[6] Although the *Beckner* court purported to distinguish the *Cero Realty* case and not overrule it, had the *Beckner* rule been applied to the facts of *Cero Realty*, it is unlikely that the savings statute would have been held applicable. The adverse ruling of the trial court in that case did not technically *prevent* a trial of the cause upon the merits. Rather, the plaintiff could have filed a *second* amended petition and further prosecuted the case. See Recent Cases, 29 Univ. of Cincinnati L. Rev. 516, 517.

[7] See Browne, Voluntary Dismissals and the Savings Statute: Has Rule 41(A) Changed the Law?, 23 Cleve. St. L. Rev. 215, fn. 24, at page 223: "Under the Code, nothing could be done to curb voluntary dismissals and refilings occurring before the statute of limitations had run, since §2323.05 provided for unlimited voluntary dismissals in that situation. * * * But if the voluntary dismissal and the refiling both took place after the statute had run, the second action could be barred by judicial construction which limited the word 'fail' as used in §2305.19. Thus, under the Code, this latter is the only instance in which voluntary dismissals could be controlled."

at page 40, where the court noted that to reject the *Siegfried* rationale "would be to establish a rule whereby litigants could substitute a voluntary dismissal without prejudice for an appeal from claimed errors occurring during a trial. *Under such a practice, parties could try and retry their causes indefinitely until the most favorable circumstances for submission were finally achieved.* In our opinion, Section 2305.19, neither provides for nor permits such a practice." (Emphasis added.)

Since the adoption of the Civil Rules, however, it is no longer necessary to narrowly define the phrase "fails otherwise than upon the merits" in order to prevent the unlimited abuse feared by the court in earlier cases. Under Civ. R. 41(A)(1) a plaintiff may only once unilaterally dismiss an action while reserving his right to refile. A subsequent dismissal by notice operates as an adjudication upon the merits and is *res judicata.* Similarly, the Rule forbids a plaintiff from unilaterally withdrawing by notice once trial has been commenced. After commencement of trial the plaintiff must have the concurrence to the withdrawal of all other parties (dismissal by stipulation), or subject himself to the court's discretion by moving for a court-ordered dismissal pursuant to Civ. R. 41(A)(2). Indeed the possibility of plaintiff abuse is almost entirely mitigated where a dismissal is made pursuant to Civ. R. 41(A)(2) and, thus, is subject totally to the control of the court, acting within its sound discretion.

In light of these changed procedural circumstances, and in order to give the savings statute a liberal construction, where a dismissal is ordered pursuant to Civ. R. 41(A)(2), we find little justification for clinging to the *Siegfried* definition of the word "fails" in R. C. 2305.19.[8]

Other state courts have found voluntary dismissals to be "failures" for purposes of savings provisions similar to R. C. 2305.19, because the plaintiff has failed to obtain the object of his suit. *McWhirt* v. *McKee* (1870), 6 Kan. 412; *Meyer* v. *Wilson* (1930), 131 Kan. 717, 293 P. 738; *Wilson* v. *Wheeler* (1911), 28 Okla. 726, 115 P. 1117. Such an interpretation is consistent with the definition commonly accorded the word

---

[8] Because our inquiry herein is directed to a Civ. R. 41(A)(2) dismissal, we express no opinion as to the continued vitality of the *Siegfried* rule where a voluntary dismissal is made pursuant to notice or stipulation.

"failure."[9] We will not violate the policies underlying statutes of limitations of preventing unfair surprise and delay in asserting claims by joining those jurisdictions, as the defendant was made aware of the existence of the claim during the original limitations period.

Because the dismissal without prejudice ordered in plaintiff-appellant's first action pursuant to Civ. R. 41(A)(2) was both a "failure" of the plaintiff's action as well as an order based "otherwise than on the merits," the instant action falls within R. C. 2305.19, and was timely filed.

## II.

In describing his fall, the plaintiff testified that, in starting his descent down the cement steps from the Klip Inn, his foot "flew out from under him." He described the steps as being slanted and broken with slight depressions, and covered with slush and ice. He testified that there was no railing to which he could have held.

Although a negligence action by a business invitee will not lie where the sole negligence asserted is a failure for an unreasonable time to remove natural accumulations of ice and snow, *Debie* v. *Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St. 2d 38, here plaintiff's testimony constituted evidence that the combination of circumstances, including defects and depressions in the steps, adverse weather conditions and lack of a handrail, caused a highly dangerous condition beyond the reasonable expectation of the traveler. The issue of negligence was properly before the jury. See *Cash* v. *Cincinnati* (1981), 66 Ohio St. 2d 319.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., concurs in syllabus but dissents from the judgment.

---

[9] Webster's New Collegiate Dictionary defines the verb "fail" as "to fall short" or "to be unsuccessful." Black's Law Dictionary (5 Ed.) defines "failure" as an "abandonment or defeat."

KRUPANSKY, J., concurs in part and dissents in part.

HOLMES, J., concurring in part and dissenting in part.

I concur in the syllabus, but I must dissent from the judgment because the judgment n.o.v. as entered by the trial court was a correct one based upon the law. The evidence showed that the proximate cause of the fall was a natural accumulation of ice which, under Ohio law, the appellee had no duty to remove. *Debie* v. *Cochran Pharmacy-Berwick* (1967), 11 Ohio St. 2d 38.

KRUPANSKY, J., concurring in part and dissenting in part.

I concur with the majority's decision to reverse the Court of Appeals' affirmance of the judgment notwithstanding the verdict. There was sufficient evidence based on plaintiff's testimony[10] for the jury to conclude plaintiff's injuries resulted, not only from the ice and snow on the steps, but also from defects in the steps.

I dissent, however, from the part of the majority decision which overrules the *Siegfried* line of cases. I disagree with the majority's conclusion that the *Siegfried* doctrine is no longer necessary since the adoption of the Civil Rules.

The majority reasons the *Siegfried* doctrine is no longer necessary because Civ. R. 41 mitigates plaintiff abuse earlier feared by the court. The unfortunate effect, however, of the majority decision is it will actually encourage plaintiff abuse; it allows plaintiffs to voluntarily dismiss at least once even after the statute of limitations has run, and thereby provides them with a tactical advantage. Previously, under the *Siegfried* doctrine, the plaintiff who voluntarily dismissed after the statute of limitations had expired could find no relief in the savings statute unless the dismissal was prompted by adverse court rulings which would have prevented a trial on the merits. *Beckner* v. *Stover* (1969), 18 Ohio St. 2d 36. Thus, previously

---

[10] Plaintiff testified as follows:

"Q. You indicated there was no railing?

"A. No, sir, there was no railing or nothing there.

"Q. When you actually put your foot on it, could you tell what was causing you—

"A. When I put my foot on it, it just shot—just went out like that. It was just so—you know, it was just at an angle. Like I say, the steps was leaning away from the building even from where you were standing just looking down. * * * "

there was no incentive for plaintiffs to voluntarily dismiss once the statute of limitations had run because of the risk of being precluded, under *Siegfried,* from refiling. Under the majority's decision, however, plaintiffs who initiate dismissals after the statute of limitations has run will be assured of the benefits of the saving statute. Plaintiffs may now dismiss, with or without good reason, disregarding the statute of limitations. Previously, the statute of limitations and the *Siegfried* line of cases acted to deter such dismissals; the result now is plaintiffs may include in their repertoire a new device, not available to defendants, which may be used arbitrarily for any reason, whether warranted or not.

The majority mistakenly assumes the policies underlying Civ. R. 41 and the policies underlying the narrow construction of the savings statute pursuant to *Siegfried* are identical. As noted by the majority, Civ. R. 41 does have the meritorious effect of lessening plaintiff abuse of the privilege to voluntarily dismiss. The *Siegfried* doctrine only partially prevented the abuse mitigated by Civ. R. 41 because prior to the adoption of Civ. R. 41, the plaintiff could voluntarily dismiss and refile as many times as desired so long as the statute of limitations had not expired. *Siegfried* prevented refiling only after the statute of limitations had run. Under Civ. R. 41(A)(1), the plaintiff who has once dismissed may not dismiss again and then claim the right to refile; dismissal at plaintiff's instance by court order, under Civ. R. 41(A)(2), is made subject to court supervision. The policies underlying Civ. R. 41 and *Siegfried* coincide only insofar as both lessen the possibility of plaintiff abuse of voluntary dismissals. Civ. R. 41, however, says nothing about the statutes of limitations and the policies underlying them.

The savings statute is an exception to the general bar of the applicable statute of limitations; it operates to extend the statute of limitations and to delay proceedings beyond the period of limitations for as long as one year. Pursuant to the *Siegfried* line of cases, the benefits of the savings statute were traditionally reserved for special cases, *e.g.,* when the plaintiff's suit was involuntarily dismissed by the court or when the plaintiff voluntarily dismissed after suffering a procedural defeat which would have prevented a trial on the merits. *Cero Realty Corp.* v. *American Mfgs. Mutual Ins. Co.*

(1960), 171 Ohio St. 82. Under such circumstances, when the plaintiff had truly tried and failed otherwise than on the merits, a reprieve from the bar of the statute of limitations was viewed as warranted. When the plaintiff, however, voluntarily dismissed because of an unfavorable court ruling which did not prevent a trial on the merits, the delay created by the application of the savings statute was not justified. *Beckner* v. *Stover, supra.* The savings statute was construed narrowly to apply in those cases only when delay was justifiable and not brought about by plaintiff's own voluntary action.

In my opinion, plaintiff's dismissal in the instant case was truly voluntary. The case had already been called to trial when plaintiff's motion for a continuance was denied; plaintiff was offered the choice of either proceeeding with the trial and compelling the doctor's attendance or dismissing. The trial court offered plaintiff the sheriff's assistance in securing his witness, but plaintiff freely elected to dismiss. It would be unfair to anticipate that the witness, a doctor who is a professional, would, while under oath, testify unfavorably to the prejudice of plaintiff. In any event, the court's denial of plaintiff's motion for a continuance on the day of trial was not so adverse to plaintiff as to prevent a trial on the merits of the case; plaintiff could have proceeded to trial had he desired. The facts of this case fall squarely within the ambit of a voluntary dismissal. The *Siegfried* doctrine, therefore, applies, and the judgment of the Court of Appeals should be affirmed.

Pursuant to the majority's decision, plaintiffs may now, with indifference to the expiration of the limitations period, dismiss their cases and delay refiling as long as one year, even after the statute of limitations has expired. The *Siegfried* doctrine would preclude such a result and should, therefore, not be abandoned by this court.