57 F.3d 1070
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 MICROVOTE CORPORATION, Plaintiff-Appellant,
v.
Terry CASEY, et al., Defendants-Appellees.
 No. 94-3890.
 United States Court of Appeals, Sixth Circuit.
 June 16, 1995.
 
 Before: NELSON and DAUGHTREY, Circuit Judges, and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 Under Rule 41(A)(1) of the Ohio Rules of Civil Procedure, a plaintiff's voluntary dismissal of an action operates as an adjudication upon the merits if "an action based on or including the same claim" has been dismissed by the plaintiff before. The main question presented in the case before us--a diversity action governed by Ohio law--is whether the plaintiff's dismissal of an Ohio state court action against the Franklin County (Ohio) Board of Elections operated as an adjudication upon the merits because of the plaintiff's previous dismissal of a similar action against the Franklin County Board of County Commissioners.
 
 
 2
 The district court answered this question in the affirmative. After examining the relationship between the defendant boards, the court concluded that the second of the state court actions to be dismissed was based on the same claim as the first. Accordingly, the court held, the plaintiff was barred from bringing a new suit on that claim in federal court.
 
 
 3
 We agree. We also agree with the district court's conclusion that insofar as claims not barred by the "two dismissal" rule were concerned, the plaintiff lacked standing to assert them. We shall therefore affirm the district court's judgment in its entirety.
 
 
 4
 * In August of 1991 the Franklin County Board of Elections, one of the defendants herein, solicited bids on a contract for supplying voting machines to the county. The plaintiff, MicroVote Corporation, offered to provide the first 800 machines at a price of $3,040,000. A competitor, R.F. Shoup Corporation, submitted a bid of $3,825,400.[1]
 
 
 5
 The Board of Elections decided that Shoup's was the better bid, notwithstanding its higher price, and the board passed a resolution recommending that the Board of County Commissioners (also a defendant herein) accept the Shoup bid. The commissioners did so.
 
 
 6
 Under the contract, which was entered into in November of 1991, Shoup was obligated to obtain a performance guaranty from defendant Veeder-Root Corporation.[2] Veeder-Root provided such a guaranty, and reaffirmed it in a letter to the county commissioners dated August 7, 1992.
 
 
 7
 The Board of Elections, acting on behalf of the county, issued a notice of default to Shoup on August 27, 1992. Veeder-Root assumed the contract pursuant to its guaranty.
 
 
 8
 In October of 1991, meanwhile, MicroVote sued the Board of Elections and its members in a state court action brought to challenge the award of the contract to Shoup. The following month MicroVote filed a parallel action in the same court against the Board of County Commissioners and its members. The latter action was predicated on essentially the same set of facts and sought essentially the same relief as the former.
 
 
 9
 The action against the commissioners was dismissed on April 8, 1992, by the filing of a notice of dismissal signed by MicroVote's counsel. Moments later a similar notice was filed in the other case. Each notice stated that the dismissal was without prejudice.
 
 
 10
 In January of 1993 MicroVote commenced the present diversity action in federal district court. Among the defendants were the Board of Elections and the Board of County Commissioners and their members (collectively, "the county defendants") and Veeder-Root. (Shoup and its president were also named as defendants, but they were never served with process.)
 
 
 11
 Although the new complaint was much lengthier than its predecessors, it set forth a similar challenge to the award of the contract to Shoup. It also claimed, among other things, that there had been an illegal transfer or assignment of the contract to Veeder-Root.
 
 
 12
 Asserting that MicroVote had previously filed and dismissed two actions based on the same claim, Veeder-Root moved to dismiss the complaint as barred by the doctrine of res judicata. A similar motion was filed by the county defendants.
 
 
 13
 The district court (Holschuh, J.) initially declined to dismiss the illegal assignment claims, Veeder-Root not having assumed the contract until after the state court actions had been dismissed. Claims arising after the dismissals could not be considered the same claims under Rule 41(A)(1), the court held. But MicroVote's challenges to the legality of the award of the contract to Shoup were the same claims, the court went on to hold, and those claims were dismissed on res judicata grounds under the two dismissal rule.
 
 
 14
 Veeder-Root then moved to dismiss MicroVote's illegal assignment claims on the ground that MicroVote lacked standing to assert them. The county defendants filed a motion to the same effect. The district court ordered that both motions to dismiss be treated as motions for summary judgment, and the motions were subsequently granted. Shoup and its president were dismissed from the lawsuit for failure of service, and the action itself was dismissed on July 19, 1994. MicroVote filed a timely notice of appeal in mid-August.
 
 II
 
 15
 Ohio's Rule 41(A)(1), which is substantially the same as Rule 41(a)(1) of the Federal Rules of Civil Procedure, concludes with this sentence:
 
 
 16
 "Unless otherwise stated in the notice of dismissal or stipulation, [a voluntary dismissal] is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court, an action based on or including the same claim." (Emphasis supplied.)
 
 
 17
 A dismissal that operates as an adjudication upon the merits has the effect of a dismissal with prejudice, and if an action that has been so dismissed is refiled, it "is vulnerable to the defense of res judicata." Chadwick v. Barba Lou, Inc., 69 Ohio St.2d 222, 226, 431 N.E.2d 660, 663 (1982).
 
 
 18
 Where the parties are the same, at least, Ohio's "test for determining whether a second suit is for the same cause of action as the first is to consider the facts necessary to sustain the two claims." Duncan v. Peck, 752 F.2d 1135, 1139 (6th Cir.1985). Applying this test here, it is clear that the same set of facts is necessary to sustain MicroVote's claims with respect to the award of the voting machine contract to Shoup. If both of MicroVote's state court actions had been brought against the same defendants, then, there could be little doubt that the second voluntary dismissal precluded a subsequent action on the same claims.
 
 
 19
 We have found no Ohio case addressing the applicability of the two dismissal rule in a situation where the defendants in the earlier cases were not the same. Generally, however, Ohio is prepared to apply the doctrine of res judicata not only where the parties to the later action are identical to those in the earlier action, but also where there is privity between the parties in the two cases. See Johnson's Island, Inc. v. Board of Township Trustees of Danbury Township, 69 Ohio St.2d 241, 244, 431 N.E.2d 672, 674-75 (1982). The existence of privity, in this context, turns on whether there is a "sufficient mutuality of interest" between the parties in the first case and the parties in the second one. 69 Ohio St.2d at 245, 431 N.E.2d at 675. We are satisfied that the Ohio courts would find a sufficient mutuality of interest between the Board of Elections and the Board of County Commissioners to warrant application of the two dismissal rule in the case at bar.
 
 
 20
 Although the members of a board of elections are appointed by the Secretary of State to serve as his representatives, see Ohio Rev.Code Sec. 3501.06, all expenses of the board must be paid with funds appropriated from the county treasurer by the local board of county commissioners. See Ohio Rev.Code Sec. 3501.17. In the instant case, the tie between the two boards was more than financial. Under Ohio law a board of county commissioners may "adopt" voting machines either by putting the question to the voters or upon recommendation of the board of elections. Ohio Rev.Code Sec. 3507.02. The latter procedure was the one followed here. The two boards worked hand in glove in the procurement, and the resolution in which the Board of Elections recommended the Shoup machines stated that the Board put the contract up for competitive bids "in conjunction with the County Commissioners and the Franklin County Purchasing Department...."
 
 
 21
 The bidders, including MicroVote, must have known that the contract on which they were bidding would be with the county commissioners, for whom the Board of Elections was acting in selecting the machines. Under the statutory scheme, both the Board of Elections and the Board of County Commissioners were essential actors: neither could complete the acquisition without the other. But for this essential nexus between the two bodies, the cause of action would not have arisen at all. It is hard to imagine a greater "mutuality of interest" than that which existed between the boards in this case. The district court's application of the two dismissal rule was clearly correct.
 
 III
 
 22
 It is well established in Ohio that "an action for breach of contract can only be maintained by the parties to the contract or those deriving rights from the contracting parties." American Rock Mechanics, Inc. v. Thermex Energy Corp., 80 Ohio App.3d 53, 58, 608 N.E.2d 830, 833 (Cuyahoga 1992). Because it was never a party to the Shoup contract, MicroVote has no standing to challenge a breach of the contract by any party. The fact that MicroVote was a disappointed bidder gave it no special interest in how the contract was administered or carried out.
 
 
 23
 If the county defendants had canceled the contract as a result of Shoup's default and had awarded a new contract without competitive bidding, MicroVote, as a prospective bidder, might have had standing to challenge the new award. But that is not what happened. Veeder-Root had guaranteed Shoup's performance of the contract pursuant to paragraph 4 (quoted in n. 2, supra ), and Veeder-Roote was called upon to assume the contract pursuant to its guarantee. It did so. The pertinent facts are undisputed, and, as the district court correctly concluded, "it is clear that no new contract was awarded that required competitive bidding...."
 
 
 24
 Accordingly, and because we see no merit in MicroVote's remaining contentions, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 MicroVote is an Indiana corporation with its principal office in that state, and Shoup is a Delaware corporation with its principal office in Pennsylvania
 
 
 [2]
 The provision in question reads as follows: "After the signing of this contract and prior to the delivery of any machines, Shoup will obtain from its manufacturer, Veeder-Roote Corporation, a notarized statement from its chief executive officer, providing a guarantee to Franklin County to cover the contract and the complete bid specifications...." (Contract of 11/19/91, para. 4.)