[Cite as *Mays v. Knolls Apartment Complex*, 2023-Ohio-391.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

JANE MAYS                                     :
                                              :
    Appellant                           :      C.A. No. 29556
                                              :
v.                                            :      Trial Court Case No. 2021 CV 03832
                                              :
THE KNOLLS APARTMENT                          :      (Civil Appeal from Common Pleas
COMPLEX, et al.                               :      Court)
                                              :
    Appellees                           :

. . . . . . . . . . .

O P I N I O N

Rendered on February 10, 2023

. . . . . . . . . . .

RICHARD P. GABELMAN, Attorney for Appellant

ANNE P. KEETON and MICHAEL D. RICE, Attorneys for Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} In this personal injury action, Plaintiff-Appellant, Jane Mays, appeals from a summary judgment action granted in favor of Defendant-Appellee, The Knolls Apartment Complex ("The Knolls"). According to Mays, the defect in the sidewalk on The Knolls'

premises was not open and obvious to a reasonable person, and attendant circumstances existed because she was distracted by looking for her missing godson.

{¶ 2} We conclude that the trial court correctly granted summary judgment to The Knolls. The Knolls had no duty to Mays because the defect in the sidewalk was open and obvious, and no attendant circumstances existed that warranted holding The Knolls liable. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 3} On September 16, 2021, Mays filed a complaint for personal injury against The Knolls, Miami Township, and John Doe Corporations 1-10. The complaint arose from an incident that occurred on October 18, 2019, when Mays fell on an allegedly defective sidewalk on The Knolls' property. According to the complaint, Miami Township owned and operated the sidewalk, and the John Doe defendants owned and operated The Knolls or were responsible for maintaining and inspecting the sidewalks. The complaint further alleged that Mays had suffered a broken pinky finger and a blackened eye due to the defendants' negligent and/or reckless acts.

{¶ 4} On October 11, 2021, Miami Township filed a motion to dismiss based on its immunity from liability under R.C. Chap. 2744. The Knolls then filed an answer to the complaint on October 19, 2021, identifying the actual property owner as Consolidated Properties IV, LLC, and raising various affirmative defenses. On October 21, 2021, Mays dismissed her claims against Miami Township without prejudice, pursuant to Civ.R. 41(A).

{¶ 5} Following a scheduling conference, the parties filed a Civ.R. 26(F)(3) discovery plan. The court then filed a final pretrial order, setting a May 31, 2022 deadline for summary judgment motions and an August 29, 2022 trial date. After taking Mays's deposition, The Knolls filed a motion for summary judgment on May 31, 2022. Mays responded to the motion on June 27, 2022, and The Knolls then filed a reply on July 7, 2022.

{¶ 6} On July 18, 2022, the trial court granted summary judgment to The Knolls and dismissed the case. The court found that the crack in the sidewalk had been open and obvious and that The Knolls had not owed a duty to Mays. The court further found that no attendant circumstances had existed at the time of the fall. Decision, Order and Entry Sustaining Defendant's Motion for Summary Judgment; Entry of Dismissal (July 18, 2022) ("Final Judgment"), p. 9. Mays appeals from the court's judgment.

## II. Alleged Error in Granting Summary Judgment

{¶ 7} Mays's sole assignment of error states that:

The Trial Court Erred in Granting Defendant's Motion for Summary Judgment.

{¶ 8} Mays contends that the danger of the sidewalk was not open and obvious to a reasonable person who did not have a reason to believe a part of the sidewalk would be missing. Mays also argues that attendant circumstances existed because she was looking for her godson at the time, who was lost. Before addressing these issues, we will outline the standards of review.

## A. Standards of Review

**{¶ 9}** We review summary judgments de novo, "which means that we apply the same standards as the trial court."  *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).  "In de novo review, we independently review a trial court's decision and accord it no deference."  *Clark v. Beyoglides*, 2021-Ohio-4588, 182 N.E.3d 1212, ¶ 19 (2d Dist.), citing *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

**{¶ 10}** "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."  *State ex rel. Duncan v. Mentor City Council,* 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).  " 'As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' "  *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B.   Discussion

### 1.   The Open and Obvious Doctrine

**{¶ 11}** "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom."   *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981). "The status of a person who enters the land of another defines the scope of the legal duty owed to that person."   *Nicoll v. Centerville City Schools*, 2018-Ohio-36, 102 N.E.3d 1212, ¶ 13 (2d Dist.), citing *Gladon v. Greater Cleveland Reg. Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996).

**{¶ 12}** "Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability."   *Gladon* at 315, citing *Shump v. First Continental-Robinwood Assoc.*, 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1974). "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner."   *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986).   In this situation, the owner of the premises has a duty "to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition."   *Id.*, citing *Presley v. Norwood*, 36 Ohio St.2d 29, 31, 303 N.E.2d 81 (1973).

**{¶ 13}** In contrast, "a person who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation, is a licensee.   A licensee takes his license subject to its attendant perils and risks.   The licensor is not liable for ordinary negligence and owes the licensee no duty except to refrain from

wantonly or willfully causing injury." *Id.*, citing *Hannan v. Ehrlich*, 102 Ohio St. 176, 131 N.E. 504 (1921), paragraph four of the syllabus. (Other citation omitted.)

{¶ 14} The Knolls has argued that Mays was a licensee because she was not on the sidewalk for a reason that benefitted The Knolls; instead, she was on the property for her own benefit. As a result, The Knolls argues that it is liable only for wantonly or willfully causing injury. The trial court did not decide this point but based its decision on the fact that the danger was open and obvious and no attendant circumstances existed. Final Judgment at p. 6-9. As a result, regardless of Mays's status, no duty would have existed. For purposes of our discussion, we need not resolve this point, either. Even if we assume that Mays was a business invitee, the issue is whether liability would be precluded under the open and obvious doctrine.

{¶ 15} Ohio courts have long held that "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 14, *approving and following Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968). "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.' " *Id.* at ¶ 5, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{¶ 16} The Supreme Court of Ohio has cautioned that when courts apply the open-and-obvious rule, "they must focus on the fact that the doctrine relates to the threshold

issue of duty. By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." (Citation omitted.) *Id.* at ¶ 13.

**{¶ 17}** "To be open and obvious, a hazard must not be concealed and must be discoverable by ordinary inspection." *Larrick v. J.B.T., Ltd.*, 2d Dist. Montgomery No. 21692, 2007-Ohio-1509, ¶ 11, citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 50-51, 566 N.E.2d 698 (5th Dist.1989). "The relevant issue is not whether an individual observes the condition, but whether the condition is capable of being observed." *Id.*, citing *Lydic v. Lowe's Cos., Inc.,* 10th Dist. Franklin No. 01AP-1432, 2002-Ohio-5001, ¶ 10.

**{¶ 18}** When the accident occurred in October 2019, Mays was 69 years old and lived in a townhouse in a complex called the Villas at Arboretum ("Villas"). Mays Deposition Transcript, Vol. I ("Tr. I"), p. 7, 8, and 20. Mays had lived there since around 2016 and had moved there to be closer to a friend, Deshawn, with whom she had worked at the VA Hospital. *Id.* at p. 21-22. Deshawn's townhouse was about 50 feet from Mays's home, and Deshawn had a son, Kenny, who was Mays's godson and was six years old. *Id.* at p, 23, 25, and 33, and Mays Deposition Transcript II ("Tr. II"), p. 16.

**{¶ 19}** At the time of the accident, Mays was not employed and helped Deshawn out by taking Kenny to the school bus and picking him up from the bus after school.

Kenny would then stay with Mays until Deshawn got home from work at 5:30 p.m. Tr. I at p. 25, 29, and 33. Normally, Mays drove to the bus stop when dropping Kenny off and picking him up. *Id.* at p. 31. The bus stop was located on Knollsridge Drive, which is a road that comes into The Knolls Apartment Complex from N. Springboro Pike (also known as Route 741). *Id.* at p. 30, 40, and 41, and Tr. II at p. 8, 13, and 17.

{¶ 20} Mays was not familiar with the streets in the Villas or The Knolls, because she did not walk around the complexes. Tr. I at p. 34-35. On the day of the accident, Mays left her townhouse and drove to the bus stop to wait for Kenny. She parked at an area where the lined main road became a blacktop road leading to the Villas complex. The bus stop was located farther up the main road. *Id.* at p. 30, 40, 41, and 42, and Tr. II at p. 17-18.

{¶ 21} The bus had already come to drop off children. As Mays waited, two boys walked up and told her that Kenny had gone off with a little girl into The Knolls apartment complex. Tr. II at p. 16 and 18-19. After hearing this, Mays drove up on the main road past the school bus stop and parked her car. Her intention was to get out of the car and walk up the sidewalk calling Kenny. *Id.* at p. 19-20 and 22. The sun was shining and it was dry. There was no fog. *Id.* at p. 7.

{¶ 22} Mays parked on the right side of Knollsridge Drive and walked across the street to the other side. She stepped up over the curb and went to the sidewalk. She then walked down the sidewalk, calling for Kenny a couple of times. *Id.* at p. 23, 25, and 52.

{¶ 23} Mays walked down the sidewalk for about 20 feet before she fell. *Id.* at p.

11. The sidewalk was dry, Mays did not have anything in her hands, and nothing that she saw diverted her eyes from the path. *Id.* at p. 26 and 38. Mays was walking normally as one would walk, looking back and forth. *Id.* at p. 24 However, she was not looking down and was not paying attention to the sidewalk because she was focused on looking for Kenny, which was her priority. *Id.* at p. 38, 47, 48, and 49. As Mays walked, her left foot tripped over a hole in the sidewalk and she fell. *Id.* at p. 39-40. After Mays fell, she noticed that a brown box surrounded by four yellow bollards (or posts) was located in the area to the left of where she had fallen, and that one bollard was about four to five inches from the hole. *Id.* at p. 41 and 48. Mays stated that if she had been looking at the sidewalk, she would have moved over from the hole. *Id.* at p. 50.

{¶ 24} The photos of the sidewalk showed some hairline cracks in the sidewalk and a small hole on the sidewalk's left side, where the cement appeared to have crumbled. *See* Tr. II at p. 43, and Ex. C attached to Tr. II (a set of eight photos of the sidewalk area). The hole was not deep at all. The second photo, taken from the direction of Mays's vantage point as she was traveling, indicated that the cracks and the hole were clearly visible to pedestrians. Tr. II at p. 44-45.

{¶ 25} Mays fell on her left side and fractured her left pinky finger as a result. She also scraped her face and had a swollen eye. *Id.* at p. 64-65. Mays was not able to stand up immediately but was sitting up about five to ten minutes after she fell, assessing her injuries. *Id.* at p. 53 and 56. At that point, the boys who had told her about Kenny returned and said Kenny was in a playground area of the complex. Mays then asked them to bring him back, and they did. Mays was subsequently able to stand and drove

herself to the hospital.   *Id.* at p. 34, 58, 59, and 63.

**{¶ 26}** Based on the undisputed circumstances of the accident, no conclusion can be reached other than that the defect on which Mays tripped was open and obvious, and Mays would have been able to see it if she had been paying attention.   The relevant issue is not whether Mays was distracted; it is whether the defect was capable of being observed, and it clearly was.   Accordingly, the trial court did not err in finding that the defect was open and obvious.

### B.   Attendant Circumstances

**{¶ 27}** According to Mays, she can still recover even if the sidewalk defect was open and obvious, because attendant circumstances existed.   Mays argues that these circumstances included the fact that she was a 70-year-old (actually 69-year-old) woman who was desperately seeking to find a young missing child.   Appellant's Brief, p. 6.   The fact that Kenny ran off was also not a circumstance that had previously occurred.   *Id.*

**{¶ 28}** We have previously noted that " '[a]ttendant circumstances' may affect the applicability of the open and obvious doctrine.   An attendant circumstance is a factor that contributes to the fall and is beyond the control of the injured party."   *Roberts v. Kauffman 4 Dayton, Ltd.*, 2d Dist. Montgomery No. 29412, 2022-Ohio-3164, ¶ 28, citing *Backus v. Giant Eagle, Inc.*, 115 Ohio App.3d 155, 158, 684 N.E.2d 1273 (7th Dist.1996).   It is true that Kenny's actions were not within Mays's control.   However, this is not the type of "attendant circumstances" that warrant application of the concept.

**{¶ 29}** Attendant circumstances that make situations "unreasonably unsafe"

include matters like pedestrians approaching busy intersections who have their attention diverted "by traffic signal lights, by surrounding vehicular traffic, and by other pedestrian traffic along the same walkway." *Cash v. City of Cincinnati*, 66 Ohio St.2d 319, 324, 421 N.E.2d 1275 (1981). *Cash* also stressed the time of day (a busy lunchtime rush that would have obstructed other pedestrians' view). *Id.* Attendant circumstances have also included "adverse weather conditions" (combined with other factors). *Chadwick v. Barba Lou, Inc.*, 69 Ohio St.2d 222, 230, 431 N.E.2d 660 (1982). As an additional matter, " '[a]ttendant circumstances do not include the individual's activity at the time of the fall unless the individual's attention was diverted by an unusual circumstance of the property owner's making.' " *Meyer v. Dayton*, 2016-Ohio-8080, 74 N.E.3d 921, ¶ 19 (2d Dist.), quoting *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 17. *Accord Nicoll*, 2018-Ohio-36, 102 N.E.3d 1212, at ¶ 17.

{¶ 30} As previously noted, the weather at the time of Mays's fall was sunny and dry, and the sidewalk was also dry. In addition, the area was a quiet and peaceful residential street with no through traffic, no unusual sounds were present, no other pedestrians were in the area, and no obstacles were in Mays's path as she walked on the sidewalk. Tr. II at p. 15-16. Consequently, no attendant circumstances existed that provided a basis for holding The Knolls liable. The trial court, therefore, correctly granted summary judgment in The Knolls's favor, and Mays's sole assignment is overruled.

III. Conclusion

{¶ 31} Mays's assignment of error having been overruled, the judgment of the trial

court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and EPLEY, J., concur.