# IN THE SUPREME COURT OF IOWA

No. 10–0180

Filed September 30, 2011

**CHARLES FURNALD,**

Appellant,

vs.

**ANTHONY HUGHES** and
**EMCASCO INSURANCE COMPANY,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Warren County, William H. Joy, Judge.

On further review, plaintiff argues the district court and court of appeals erred in holding that Iowa Code section 614.10 (2009) is inapplicable when a plaintiff voluntarily dismisses an action without first seeking a continuance or delay in the underlying action. **AFFIRMED.**

David A. Hirsch of Harding Law Office, Des Moines, for appellant.

Jon A. Vasey of Elverson, Vasey & Peterson, L.L.P., Des Moines, for appellee Hughes.

C. Scott Wormsley of Bradshaw, Fowler, Proctor, and Fairgrave, P.C., Des Moines, for appellee EMCASCO.

**APPEL, Justice.**

This case requires that we consider the scope of Iowa's savings statute that continues the deadline imposed by the statute of limitations for six months when "the plaintiff, for any cause except negligence in its prosecution, fails therein." Iowa Code § 614.10 (2009). In this case, the plaintiff brought a personal injury action arising out of an automobile accident. The plaintiff voluntarily dismissed the action eleven days prior to trial in order to further develop expert testimony on the extent of permanent injuries caused by the accident. The plaintiff then refiled the action nearly two months later. The defendant sought to dismiss on the ground that the plaintiff was not entitled to protection of the savings statute. The district court granted summary judgment to the defendant, holding Iowa's savings statute inapplicable under the facts of the case. The plaintiff appealed, the court of appeals affirmed, and we granted further review.

The question posed on appeal is whether the voluntary dismissal of the plaintiff's claim under the circumstances of this case meets the savings statute requirement that it "fails" without "negligence in its prosecution." For the reasons described below, we conclude that the plaintiff's claim does not meet the requirements of the savings statute and that the district court properly granted summary judgment for the defendant.

## I. Factual and Procedural Background.

The plaintiff, Charles Furnald, and defendant, Anthony Hughes, were involved in an automobile accident in July 2006. Furnald filed a timely personal injury lawsuit against Hughes arising out of the accident. Furnald also timely filed an underinsured/uninsured claim against

EMCASCO Insurance Company. The district court set a trial date of April 14, 2009.

On April 3, 2009, eleven days prior to the scheduled trial, Furnald voluntarily dismissed his claims without prejudice. Furnald's counsel left two telephone messages with opposing counsel advising him of the dismissal and his intent to refile the action. Furnald's counsel did not file a motion for continuance of the trial, and he did not seek consent of opposing counsel regarding the dismissal. He acted unilaterally.

On June 29, 2009, Furnald refiled the action. Hughes's answer raised the affirmative defense that the action was barred by the two-year statute of limitations established in Iowa Code section 614.1(2). Hughes then filed a motion for summary judgment based on the statute of limitations defense. In the papers supporting the motion, Hughes asserted that the savings clause of Iowa Code section 614.10 was not available to Furnald because "negligence in prosecution was the sole cause of the 'failure' of the prior lawsuit."

Furnald resisted. He claimed that Iowa Code section 614.10 permits a unilateral, voluntary dismissal when the plaintiff's medical condition "continued to deteriorate" after the filing of the action. In preparing for trial, Furnald's counsel reviewed December 2008 medical records in February 2009 and determined that additional medical examinations were necessary to determine if future medicals should be part of Furnald's claim. Furnald's counsel stated that, at the time of dismissal, Furnald was undergoing additional medical workups to determine the extent of injuries. Furnald notes that, while an August 2007 medical examination gave him a zero percent impairment rating, a medical examination on April 29, 2009, indicated that he had an eight percent whole person impairment as a result of the accident. The gist of

Furnald's position was that, because his physical condition was deteriorating and the nature of his injuries evolving, he could voluntarily dismiss his claim in order to better develop his damages claim.[1]

Hughes responded that the plaintiff has the burden of showing lack of "negligence in the prosecution" of the underlying lawsuit. Citing *Pardey v. Town of Mechanicsville*, 112 Iowa 68, 83 N.W. 828 (1900), Hughes argued that to voluntarily dismiss a suit after the statute of limitations had run without seeking a continuance constitutes negligence in the prosecution.

The district court granted summary judgment in Hughes's favor. The district court noted that Furnald's counsel failed to seek a continuance and failed to consult with opposing counsel about a continuance or delay in trial. Citing three older Iowa cases, the district court noted that, under these circumstances, Furnald was not compelled to voluntarily dismiss the action as required under Iowa case law.

## II. Standard of Review.

Summary judgment rulings are reviewed for correction of errors at law. *See* Iowa R. App. P. 6.907; *Travelers Indem. Co. v. D.J. Franzen, Inc.*, 792 N.W.2d 242, 245 (Iowa 2010). Summary judgment is appropriate when the moving party "affirmatively establish[es] the existence of undisputed facts entitling that party to a particular result under controlling law." *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999). Although the burden is usually on the moving party to show the absence of a material fact, *Wright v. Am. Cyanamid Co.*, 599 N.W.2d 668, 670 (Iowa 1999), we have held that the burden of

---

[1]Furnald does not claim that the statute of limitations should be tolled based upon estoppel or any other equitable theory. *See* James M. Fischer, *The Limits of Statutes of Limitation*, 16 Sw. U. L. Rev. 1, 8–14 (1986) (discussing tolling of statute of limitations on equitable grounds).

showing entitlement to relief under Iowa's savings statute falls on the plaintiff, *Sautter v. Interstate Power Co.*, 563 N.W.2d 609, 610 (Iowa 1997).

### III. Discussion.

**A. Concept of Savings Statutes.** Savings statutes are as old as statutes of limitations. When the first statute of limitations was enacted in England in 1623, it was accompanied by a savings clause. *Gaines v. City of New York*, 109 N.E. 594, 595 (N.Y. 1915). Today, many states have enacted a version of a savings clause in their own versions of the statute of limitations. Iowa's savings clause dates to our early days of statehood. *See* Iowa Code § 1668 (1851) (statute nearly identical to Iowa Code section 614.10 (2009)).

The purpose of a savings statute is to prevent minor or technical mistakes from precluding a plaintiff from obtaining his day in court and having his claim decided on the merits. *Gen. Accident Fire & Life Assurance Corp. v. Kirkland*, 356 S.W.2d 283, 285 (Tenn. 1962); William D. Ferguson, *The Statutes of Limitation Saving Statutes* 56–58 (1978) [hereinafter Ferguson]. The concept generally seems clear enough. For example, substantial argument can be made that a timely but highly contested claim that is ultimately dismissed for lack of subject matter jurisdiction, personal jurisdiction, venue, or for some arcane pleading or other procedural defect, should not leave a plaintiff without a day in court because of the expiration during the pendency of the action by the statute of limitations.

At the same time, while it is important to provide plaintiffs with a meaningful day in court, savings statutes are not ordinarily designed to swallow entirely the ordinary restrictions of a statute of limitation. Statutes of limitation embrace weighty policies of certainty and ensure

that trials occur when witnesses' memories are fresh and nontestimonial evidence is still available. *See Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S. Ct. 582, 586, 88 L. Ed. 788, 792 (1944). The need to strike a proper balance between the competing policies of providing a plaintiff with a meaningful opportunity to be heard while providing a defendant with the certainty and stability afforded by a statute of limitations has been an issue confronting legislatures and the courts for decades.

Whether a voluntary dismissal at the request of the plaintiff is the kind of failure that allows the plaintiff to bring a new action within the period of time specified by a savings statute is a subject of controversy. *See generally* C.C. Marvel, Annotation, *Voluntary Dismissal or Nonsuit as Within Provision of Statute Extending Time for New Action in Case of Dismissal or Failure of Original Action Otherwise than upon the Merits*, 79 A.L.R.2d 1290 (1961) (collecting cases). The answer depends upon the particular wording of the applicable savings statute and the judicial gloss placed upon those words.

**B. Approaches Under Other State Savings Statutes to Voluntary Dismissals.**

1. *Rule of construction.* Many cases from other jurisdictions suggest that savings statutes are to be regarded as remedial and liberally construed to serve the purpose of affording a diligent plaintiff the opportunity to renew a suit that was dismissed on grounds other than the merits. *See, e.g., Gosnell v. Whetsel*, 198 A.2d 924, 927 (Del. 1964); *Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn. 1995); *see also Smith v. Stratton*, 835 P.2d 1162, 1165 (Alaska 1992). In holding that an involuntary dismissal did not disqualify a plaintiff from seeking relief under the statute, Justice Cardozo declared that the purpose of the

savings statute "is not to be frittered away by any narrow construction." *Gaines*, 109 N.E. at 596. The rule of liberal construction, however, does not provide reviewing courts a license to rewrite the terms of the statute. *See McCoy v. Montgomery*, 259 S.W.3d 430, 434 (Ark. 2007) (holding service must be attempted notwithstanding liberal interpretation of statute); *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 653 N.E.2d 235, 240 (Ohio 1995) (stating party seeking to invoke savings statute must meet statutory criteria notwithstanding liberal construction).

2. *State savings statutes expressly addressing voluntary dismissals.* In a number of states, savings statutes directly address the issue of whether a plaintiff may voluntarily dismiss an action and avail himself of the benefit of the savings provision. The savings statutes in Georgia, Tennessee, and Virginia explicitly allow application of the savings statute when the "plaintiff discontinues or dismisses" the action, whenever a "judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action," and to a "voluntary nonsuit." *See* Ga. Code Ann. § 9-2-61(a) (West, Westlaw through 2011 Reg. Sess.); Tenn. Code Ann. § 28-1-105(a) (West, Westlaw through 2011 1st Reg. Sess.); Va. Code Ann. § 8.01-229(E)(3) (West, Westlaw through 2011 Reg. Sess. & 2011 Special Sess. I, ch. 1). In contrast, savings statutes in Montana, New York, Oregon, Pennsylvania, and Rhode Island do not apply to actions "voluntarily dismissed," to "voluntary discontinuance[s]," or to "voluntary nonsuits." *See* Mont. Code Ann. § 27-2-407 (Westlaw through 2011 laws effective through July 1, 2011 & 2010 ballot measures); N.Y. C.P.L.R. § 205(a) (McKinney, Westlaw through L.2011, ch. 1–54, 58, 63–96, 98–108); Or. Rev. Stat. Ann. § 12.220(1) (West, Westlaw through 2011 Reg. Sess., ch. 733); 42 Pa. Cons. Stat. Ann. § 5535(a)(2)(ii) (West, Westlaw through 2011 Acts 1–

75); R.I. Gen. Laws Ann. § 9-1-22 (West, Westlaw through 2010 Sess., ch. 321).  Finally, there are statutes that allow plaintiffs who voluntarily dismiss claims to seek the benefit of savings statutes under certain circumstances.  For example, while the Nebraska savings statute generally does not allow voluntary dismissals to obtain the benefit of the statute, the legislature has expressly provided for an exception for cases voluntarily dismissed as the result of a loss of diversity in federal court. *See* Neb. Rev. Stat. Ann. § 25-201.01(2) (West, Westlaw through 2010 2d Reg. Sess.); *see also* Ariz. Rev. Stat. Ann. § 12-504(A) (West, Westlaw through 1st Reg. Sess. & 3d Special Sess. of the Fiftieth Legislature) (applying to actions voluntarily dismissed by court order).  These statutes, which expressly address the issue of voluntary dismissals, demonstrate that the question of the relationship between savings statutes and voluntary dismissals has drawn considerable state legislative attention.

3. *Cases in other states involving savings statutes with Iowa-type language.*  The cases with the most potential for instruction for us, of course, are cases in which the state savings statutes do not expressly address the question of voluntary dismissals but apply only when the plaintiff's original cause of action "fails" or does not amount to a claim otherwise defeated or avoided as a matter of form.  A brief review of some of the cases that fall into this category offers insight into the nature of the debate animating the state courts as they consider the proper scope of their savings statutes.

An Indiana court held long ago that a claim that is voluntarily dismissed does not "fail" under its savings statute.  *See Pa. Co. v. Good*, 103 N.E. 672, 673–74 (Ind. App. 1913).  The rationale in *Good* was that, in order for a claim to "fail," it must be defeated by a source other than

the action of the plaintiff. *See Good*, 103 N.E. at 674. At the time of the *Good* decision, a number of state supreme courts, including the Iowa Supreme Court, had arrived at a similar interpretation of their savings statutes. *See, e.g.*, *Archer v. Chi., Burlington & Quincy Ry.*, 65 Iowa 611, 613–14, 22 N.W. 894, 894–95 (1885); *Robinson v. Merchants' & Miners' Transp. Co.*, 19 A. 113, 114–15 (R.I. 1889) (voluntary abandonment not an action "abated," "avoided," or "defeated"); *Hayes v. Stewart*, 23 Vt. 622 (1851) (voluntary dismissal not an action "otherwise defeated or avoided . . . for any matter of form").

The Indiana Court of Appeals affirmed its traditional approach in the case of *Kohlman v. Finkelstein*, 509 N.E.2d 228, 232 (Ind. Ct. App. 1987). Other state courts have followed a similar course. *See Baker v. Baningoso*, 58 A.2d 5, 8–9 (Conn. 1948) (affirming older precedent that voluntary dismissal does not qualify under statute as claim "otherwise avoided or defeated . . . for any matter of form"); *Gray v. Ahern*, 9 A.2d 38, 40–41 (R.I. 1939) (same).

On the other hand, other states, such as Kansas and Oklahoma, have taken a different approach. In both Kansas and Oklahoma, fountainhead interpretations of their state savings statutes held the requirement that an action "fails" was satisfied through voluntary dismissal of the action. *McWhirt v. McKee*, 6 Kan. 412, 419 (1870); *Wilson v. Wheeler*, 115 P. 1117, 1117 (Okla. 1911). In *McWhirt*, the court reasoned that the cause of the failure—why the case was dismissed—was not relevant as long as there was a failure to obtain the object of the suit and the failure was not on the merits. *McWhirt*, 6 Kan. at 419. The approach that a case "fails" when it is voluntarily dismissed has continued in more recent Kansas and Oklahoma cases. *See Smith v.*

*Graham,* 147 P.3d 859, 868 (Kan. 2006); *Hamilton ex rel. Hamilton v. Vaden,* 721 P.2d 412, 418 (Okla. 1986).

While the above courts have held to their long standing precedent, the Ohio Supreme Court has departed from its original view as to what constitutes a failure under Ohio's savings statute. Originally, the Ohio Supreme Court held that a voluntary dismissal did not satisfy the requirements of Ohio's savings statute. *Siegfried v. N.Y., Lake Erie & W. R.R.,* 34 N.E. 331, 332 (Ohio 1893). Ohio courts followed the *Siegfried* approach until 1982. *See, e.g., Beckner v. Stover,* 247 N.E.2d 300, 302–03 (Ohio 1969); *Cero Realty Corp. v. Am. Mfrs. Mut. Ins. Co.,* 167 N.E.2d 774, 777 (Ohio 1960).

In 1982, the Ohio Supreme Court reversed course. In *Chadwick v. Barba Lou, Inc.,* 431 N.E.2d 660, 663–64 (Ohio 1982), the Ohio Supreme Court reexamined the holding of *Siegfried* and its progeny. The Ohio Supreme Court determined that because of the adoption of the provisions of the rules of civil procedure that control voluntary dismissals, it was no longer necessary to narrowly define the phrase "fails otherwise than upon the merits" in Ohio's savings statute. *Chadwick,* 431 N.E.2d at 665. As a result, the Ohio Supreme Court abandoned the *Siegfried* line of cases and held that a case that is voluntarily dismissed "fails" under Ohio's savings statute. *Id.* A dissent in *Chadwick* suggested that the mere adoption of new rules of procedure was not a sufficient basis to change the traditional interpretation of the savings statute. *Id.* at 666–67 (Krupansky, J., concurring in part and dissenting in part).

**C. Uniform Commercial Code Approach to Savings Statute.** The Uniform Commercial Code (UCC) contains a version of the savings

statute.[2]  *See* U.C.C. § 2-725(3), 1C U.L.A. 566 (2004).  Iowa has adopted this provision.  *See* Iowa Code § 554.2725(3).  Under the UCC provision, voluntary discontinuance of the underlying action and dismissal for failure to prosecute are not bases for extending the ordinarily applicable UCC statute of limitations.  U.C.C. § 2-725(3).  This does not mean, however, that the savings clause in the UCC has no meaning.  For instance, the UCC cases indicate that when an underlying action is dismissed for failure to join an indispensible party, or when an action is dismissed for improper venue, the savings provisions of the UCC may be applicable.  *D. & J. Leasing, Inc. v. Hercules Galion Prods., Inc.*, 429 S.W.2d 854, 856–57 (Ky. 1968) (improper venue); *Hiles Co. v. Johnston Pump Co. of Pasadena, Cal.*, 560 P.2d 154, 156 (Nev. 1977) (indispensible party).  The UCC provision is limited to breach of contract actions for the sale of goods, however, and does not generally apply in personal injury actions.

**D. Iowa Law Regarding Voluntary Dismissals Under Savings Statute.**  We begin with the actual words of the Iowa savings statute.  Iowa Code section 614.10 provides:

> If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

---

[2]UCC section 2-725 provides:

> (3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

U.C.C. § 2-725(3), 1C U.L.A. 566 (2004).

Iowa Code § 614.10. The statute itself does not expressly consider the consequence of voluntary dismissals. At the same time, however, the statute is not open-ended like some other states. It is expressly limited to situations where a case "fails" without "negligence in its prosecution." *See id.*

Although there have been a couple dozen cases under Iowa's savings statute, none of them mention the need for liberal construction of the statute. Instead, we have emphasized the need for plaintiffs to provide "strict" proof that they were not negligent in the prosecution of the original actions. *Ryan v. Phoenix Ins. Co. of Hartford, Conn.*, 204 Iowa 655, 660, 215 N.W. 749, 751 (1927). Strict proof of lack of negligence is perhaps not necessarily inconsistent with an otherwise generous approach to the statute. Nonetheless, the ambience of our cases suggests a fairly focused approach. *See Boomhower v. Cerro Gordo Cnty. Bd. of Supervisors*, 173 N.W.2d 95, 98 (Iowa 1969) (Becker, J., dissenting) (noting narrow reading afforded to Iowa's savings statute). In any event, even a rule of liberal construction does not necessarily provide a basis for overruling established precedent regarding the statutory requirements of Iowa's savings statute. *See Baker*, 58 A.2d at 8 (stating liberal construction does not bring voluntary dismissal within the scope of savings statute).

The first voluntary dismissal case involving the savings statute is *Archer*. In *Archer*, the plaintiff originally brought his action in federal court, but voluntarily dismissed it believing that he could not obtain a fair trial in federal court. *Archer*, 65 Iowa at 613, 22 N.W. at 895. The plaintiff then attempted to refile his claim in state court. *Id.* at 612, 22 N.W. at 894.

In *Archer*, the court refused to apply the savings statute to allow the refiled claim. *Id.* at 613, 22 N.W. at 895. The *Archer* court noted "a voluntary dismissal under compulsion" may be a failure under the statute. *Id.* at 612–13, 22 N.W. at 894. Specifically, the *Archer* court stated that "it is possible" that a plaintiff might not be ready to try a case due to no negligence on his part and yet "be unable to obtain a continuance." *Id.* at 612, 22 N.W. at 894–95. But the *Archer* court then asked this question: "[S]uppose the plaintiff voluntarily dismisses the action, for any reason, but not under any compulsion whatever, can it be said that he has failed in the action?" *Id.* at 613, 22 N.W. at 895. The *Archer* court stated that if the plaintiff failed to prepare his case and dismissed it for that reason, he would clearly be negligent. *Id.* Applying these principles, the *Archer* court held that dismissal because the attorney believed his client would not receive a fair trial in federal court was an insufficient ground to come within the statute. *Id.*

We again addressed the issue of whether a plaintiff who voluntarily dismissed a case could refile the action under the savings statute in *Pardey*. In this case, the plaintiff claimed that she dismissed the action because her witnesses were induced into drinking alcohol to the point of intoxication, which prevented the plaintiff from calling them to testify. *Pardey*, 112 Iowa at 70, 83 N.W. at 828. The plaintiff did not request a delay or continuance. *Id.* at 71, 83 N.W. at 829.

Citing *Archer*, the *Pardey* court ruled against the plaintiff. *Id.* The *Pardey* court concluded that the plaintiff's failure to seek a continuance or delay in the proceedings rendered her dismissal "voluntary, not compulsory." *Id.* As a result, the plaintiff's dismissal of the case "was negligence in its prosecution." *Id.*

The *Pardey* court thus tended to combine the elements of "failure" and "negligence." *See id.* Under *Pardey*, a "failure" does not occur when there are other potential procedural options available to give the plaintiff relief; when there are other potential procedural options of relief available, it is negligence for a party not to pursue them. *Id.*

The next case dealing with the application of the savings statute to a voluntary dismissal is *Ceprley v. Inc. Town of Paton*, 120 Iowa 559, 95 N.W. 179 (1903). In *Ceprley*, the plaintiff dismissed the action at the close of testimony. *Ceprley*, 120 Iowa at 560, 95 N.W. at 179. The plaintiff asserted that the dismissal was necessary because the defendant offered unexpected evidence of contributory negligence that could not have been anticipated prior to trial. *Id.* at 560–61, 95 N.W. at 180.

The *Ceprley* court rejected the plaintiff's argument. *Id.* at 561, 95 N.W. at 180. The court noted that a slight delay in the trial of the cause, or a continuance if need be, were available to resolve the problem. *Id.* The *Ceprley* court stated that "[d]iligence required that the plaintiff should have endeavored in one of these two methods, or in any other way open to him, to avoid the necessity of dismissing his action." *Id.* at 561–62, 95 N.W. at 180.

Another case involving an effort to invoke the savings statute after a voluntary dismissal is *Weisz v. Moore*, 222 Iowa 492, 265 N.W. 606 (1936). In *Weisz*, the plaintiff's counsel had written letters to defense attorneys seeking a trial date, but received no response. *Weisz*, 222 Iowa at 499, 265 N.W. at 610. Then, the plaintiff's counsel received a call from the trial judge informing him that the trial would begin the next day. *Id.* The plaintiff's lawyer advised the judge that he lived 150 miles from the place of trial and that his client lived 250 miles away and that,

as a result, he could not put on his case the next day*. Id.* The judge refused to change the date*. Id.* Counsel called opposing counsel seeking agreement to a delay, which was refused. *Id.* The plaintiff's attorney again called the judge seeking arrangements to postpone the trial, which the trial court denied. *Id.* At this point, the plaintiff's attorney advised the judge that he would be forced to dismiss the case. *Id.* at 500, 265 N.W. at 610.

The *Weisz* court held that the savings statute applied to the plaintiff's second action. *Id.* The court noted there was no evidence in the record that the plaintiff intended to unduly delay trial; rather, the plaintiff sought a brief delay because he was advised of the trial date without sufficient advance notice to allow him to attend and present his case. *Id.* "Under these circumstances," the *Weisz* court explained, it could not "be said that there was a voluntary dismissal without any compulsion, because the plaintiff had not filed a normal motion for a continuance before dismissing his case." *Id.*

Since 1932, there has been one additional case dealing with the application of the savings statute to a case where some of the defendants were voluntarily dismissed. In *Tull v. Honda Research & Development, Ltd.*, 469 N.W.2d 683, 684 (Iowa 1991), the plaintiffs originally brought an action in Polk County against four corporate defendants and an individual arising out of personal injuries resulting from an accident involving an all terrain vehicle. The plaintiffs settled with all of the corporate defendants. *Tull*, 469 N.W.2d at 684. The remaining individual defendant, a nonresident of Polk County, sought to dismiss the action for improper venue. *Id.* After the district court denied the motion, this court granted leave to file an interlocutory appeal. *Id.* at 685.

On appeal, this court determined that venue was no longer proper with respect to the remaining individual defendant. *Id.* The court determined that the dismissal of the corporate defendants defeated venue as to the nonresident defendant as a matter of law. *Id.*; *see* Iowa Code § 616.20. Although venue was no longer proper, the court held that the plaintiffs were entitled to the benefit of the savings statute because they were not negligent in settling their claims against the corporate defendants. *Tull,* 469 N.W.2d at 687.

**E. Academic Commentary Regarding Application of Savings Statutes to Voluntary Dismissals.** The leading academic commentary on savings statutes generally is William D. Ferguson's treatise, *The Statutes of Limitation Saving Statutes* (1978) [hereinafter Ferguson]. This comprehensive volume surveys the history of savings statutes and proceeds to examine hundreds of cases under the various state savings statutes, including those from Iowa.

Ferguson generally argues that savings statutes are designed to allow plaintiffs to proceed on the merits and not be caught in procedural snares. Ferguson at 312. While recognizing that a proper interpretation of a savings statute depends upon the language adopted by the legislature, he generally suggests that savings statutes should not be used to provide plaintiffs with a tool to unilaterally override the applicable statute of limitations. *Id.* at 287–88.

Ferguson generally cites with approval the Iowa cases related to voluntary dismissals. *Id.* at 307–08. Further, he cites with approval *Central Construction Co. v. Klingensmith,* 256 Iowa 364, 127 N.W.2d 654 (1964), which he states stands for the proposition that the use of continuance procedures are a prerequisite to avoid the statute of limitations. Ferguson at 326–27. According to Ferguson, it seems

"eminently fair to hold that plaintiff must show reasons sufficient to warrant a continuance or to defeat a dismissal rather than delaying unduly the trial of the action and then compounding the delay by starting anew." *Id.* at 327. Ferguson, however, suggests that the proper remedy in *Weisz* might have been to require the plaintiff to suffer an adverse judgment, which would allow an appeal of the district court's decision denying a delay and continuance, rather than allowing the plaintiff to invoke the savings statute. *Id.* at 308.

**F. Analysis.** At the outset, we find that our cases concerning the application of the Iowa savings statute when the plaintiff voluntarily dismisses the underlying claim have a unifying theme. The *Archer–Pardey–Ceprley* line of cases stands for the proposition that for a voluntary dismissal to be within the scope of the term "fails" under the savings statute, there must be compulsion to the extent that a plaintiff's entire underlying claim has been, for all practical purposes, defeated. *See Ceprley*, 120 Iowa at 561–62, 95 N.W. at 180; *Pardey*, 112 Iowa at 71, 83 N.W. at 829; *Archer*, 65 Iowa at 613, 22 N.W. at 895. If the claim can still be pursued in the underlying action, it has not "failed" and it is "negligence" in the prosecution of the case not to press the matter to conclusion. *See Ceprley*, 120 Iowa at 561–62, 95 N.W. at 180; *Pardey*, 112 Iowa at 71, 83 N.W. at 829; *Archer*, 65 Iowa at 613, 22 N.W. at 894–95.

We recognize that the Eighth Circuit in *Davis v. Liberty Mutual Insurance Co.*, 55 F.3d 1365, 1368 (8th Cir. 1995), suggested our recent cases abandoned the requirement of "compulsion." We do not agree. Our review of the cases cited by the Eighth Circuit shows no indication of a change in direction.

In *Klingensmith*, we held a dismissal under Iowa Rule of Civil Procedure 215.1 for failure to prosecute a case amounted to "negligence" in prosecution, but we did not suggest that we were abandoning the compulsion requirement of *Archer, Pardey*, and *Ceprley. See Klingensmith*, 256 Iowa at 369–70, 127 N.W.2d at 657. Similarly, in *Wilson v. Wright*, 189 N.W.2d 531, 534 (Iowa 1971), we held that an attorney who failed to comply with certain technical pleading requirements was not negligent when his action was involuntarily dismissed. In *Wilson*, the compulsion requirement was plainly satisfied by the involuntary dismissal. *See Wilson*, 189 N.W.2d at 534. Finally, in *Tull*, we held that plaintiffs who voluntarily dismissed corporate defendants in a multiparty action could obtain the benefit of the savings statute when the dismissal of the corporate defendants, as a matter of law, made venue improper with respect to the remaining defendant. *Tull*, 469 N.W.2d at 687. The dismissal in *Tull* was compelled in the sense that the court's holding, which concluded improper venue required dismissal under Iowa Code section 616.20, precluded the plaintiffs from proceeding against the remaining defendant in the original claim. *See id.* None of these cases abandons the compulsion requirement under *Archer, Pardey*, and *Ceprley*.

Nonetheless, even if the cases cited in *Davis* do not indicate an abandonment of the compulsion requirement, the question remains whether we should now abandon the *Archer–Pardey–Ceprley* approach. If the *Archer–Pardey–Ceprley* line remains good law, the district court judgment must be affirmed. In this case, Furnald plainly could have sought a continuance or a delay as a remedy to the evolving medical evidence. Indeed, our rules contemplate such a procedure. *See* Iowa R. Civ. P. 1.911(1) (allowing a continuance "for any cause not growing out of

the fault or negligence of the movant, which satisfies the court that substantial justice will be more nearly obtained"). But Furnald did not follow this course. Instead, Furnald made a strategic choice to forgo seeking a continuance or delay in the underlying action and took matters into his own hands. Such strategic choices, however, are not the kind of compulsion which awakens our savings statute under *Archer*, *Pardey*, and *Ceprley*. If Furnald is to prevail in this case, we must abandon our past precedents and adopt a new interpretation of the savings statute.

We decline to do so. It is, of course, true that the rules governing the trial of cases have changed considerably over time and that some of the abuses that might have been possible in 1885—such as midtrial voluntary dismissals without prejudice and repetitive dismissal and refiling of claims—are not generally allowed under today's rules. *See, e.g.,* Iowa R. Civ. P. 1.943 (permitting voluntary dismissal up until ten days before trial and providing that a second voluntary dismissal constitutes an adjudication on the merits unless the court orders otherwise in the interests of justice). Nonetheless, the creation of these additional controls on the trial process do not cover all potential situations and do not provide a firm basis for departing from the established interpretation of our savings statute. The enactment of additional tools of trial management that may tend to mitigate or even eliminate some potential abuses does not accomplish an indirect amendment of the savings statute.

Our approach does not gut the savings statute. For example, our interpretation does not affect the classic situation in *Tull* where the plaintiff properly files an action against multiple defendants but subsequently settles with some defendants in a fashion that destroys venue. *See Tull,* 469 N.W.2d at 687. Similarly, in *Wilson,* we recognized

that a plaintiff who has a claim dismissed based upon a legitimate dispute regarding a procedural technicality may be able to invoke the savings statute. *See Wilson*, 189 N.W.2d at 533–34.

We recognize that other jurisdictions have followed a different path. As discussed above, sometimes the difference is a result of different language choices by the legislature, and sometimes the difference is the result of choices among interpretive options by courts. The legislature may be fairly charged with knowledge of the smorgasbord of varied approaches to savings statutes, contained both in legislative enactments and in judicial decisions, of other states. *See Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 459–60 (Iowa 2008) (relying on legislative and jurisprudential trends among sister jurisdictions to determine legislative intent). Further, while the legislature has reopened statute of limitations questions in Iowa Code chapter 614 on occasion since the development of our interpretive approach to the savings statute in 1885, there has been no amendment to the savings statute to override our approach to voluntary dismissals. When it comes to altering our traditional approach, the legislature has shown no appetite to do so over the past 125 years. *See Kohlman*, 509 N.E.2d at 232 (declining to change interpretation that voluntary dismissals are not within scope of savings statute in part as a result of legislative inaction over seventy-five-year period).

We, of course, reserve the right to modify or alter our statutory interpretations. For example, we may depart from our precedents when we are convinced that the prior statutory interpretations are erroneous, where subsequent events reveal impracticability or lack of logic, or where the interpretations are otherwise so flawed as to require correction. *See Rathje*, 745 N.W.2d at 447.

We find no such problems, however, with the traditional interpretation of our savings statute. Under the established *Archer–Pardey–Ceprley* approach, the remedy offered by Iowa's savings statute is narrow and sharp, not broad and blunt. The notion that our savings statute is designed to protect plaintiffs only from getting ensnared in fatal technical procedural problems that cannot be avoided through due diligence in the underlying litigation is not illogical or otherwise odd. The approach has been followed in a number of states by statute or by judicial decision, is consistent with the approach of the Uniform Commercial Code, and has the support of a leading commentator on savings statutes.

In short, we leave the law where we found it. We conclude, under the circumstances presented in this case, the plaintiff was not entitled to avail himself of the Iowa savings statute.

### IV. Conclusion.

For the above reasons, the order of the district court granting the defendant summary judgment in this matter is affirmed.

**AFFIRMED.**

All justices concur except Mansfield, J., who takes no part.