# In the Iowa Supreme Court

No. 25–0671

Submitted March 24, 2026—Filed May 29, 2026

**Michael Trask,**

Appellant,

vs.

**Amar F. Ahmed, Sandro Younadam, Shellie O'Brien-Perry, Kimberly A. Willich,** and **Oforbuike C. Ewelukwa,**

Appellees.

Appeal from the Iowa District Court for Linn County, Lars G. Anderson, Chief District Court Judge.

A plaintiff appeals the dismissal of his medical malpractice lawsuit as filed beyond the statute of limitations after the district court held that the savings statute, Iowa Code § 614.10, did not apply. **Reversed and Remanded.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Brian O. Marty (argued) and Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Jeffrey R. Kappelman (argued), Connie L. Diekema, and Jacob T. Wassenaar of Finley Law Firm, PC, Des Moines, and John A. Maschman, Frederick T. Harris, and Olivia R. McDowell of Lamson Dugan & Murray, LLP, West Des Moines, for appellees.

**McDermott, Justice.**

In this case, we must decide whether Iowa's savings statute, which treats a second lawsuit as a continuation of an earlier one, applies when a plaintiff in a medical malpractice lawsuit voluntarily dismisses his original action after serving defective certificates of merit under Iowa Code § 147.140 (2023). The district court held that the savings statute did not apply and granted the defendants' motion to dismiss the plaintiff's second lawsuit as filed beyond the statute of limitations. The plaintiff appeals.

I.

Because this case involves an appeal from the denial of a motion to dismiss, we accept the facts as alleged in the petition as true. *McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010). On January 10, 2018, Michael Trask presented to the Mercy Hospital emergency department in Cedar Rapids with lower abdominal pain. Dr. Gregory Frech examined him and ordered a CT scan. A different physician, Dr. David Van Roeckel, reviewed the scan and documented a potential small bowel obstruction, abdominal hernia, and a 2.6-centimeter suspected mid-right renal mass, and recommended an abdominal MRI. Frech reviewed Van Roeckel's report and noted the bowel obstruction and hernia, but he allegedly made no mention of the renal mass to Trask. Frech also made no recommendation for further imaging in Trask's documentation and did not include the renal mass in Trask's "problem list."

Although Trask was admitted to the hospital that night, Frech allegedly failed to communicate the abnormal finding to the hospital's admitting or surgical teams. Several members of Mercy's medical staff examined Trask, including an admitting physician, a nurse practitioner, and two doctors

conducting surgical consultations. Although each had reviewed the CT image or Van Roeckel's report, none made mention of the renal mass either in Trask's medical documentation or in communications with Trask. On January 11, Trask had laparoscopic surgery to repair the hernia. Two days later, he was discharged from the hospital without being informed of the mass in his kidney.

Almost a year and a half later, in July 2019, Trask saw Dr. Oforbuike Ewelukwa at the Mercy Gastroenterology Clinic for chronic diarrhea and rectal bleeding. Although Ewelukwa's notes indicated that he personally reviewed the earlier CT scan, he too failed to note the renal mass or to inform Trask about it.

Almost two years later, in June 2021, Trask's primary care physician ordered an MRI after some test results indicated a possible fatty liver. The MRI, performed on July 26, revealed a cystic mass on Trask's right kidney. In early August, urological consultations at Mercy and the University of Iowa confirmed that Trask had a five-centimeter complex cystic mass. In late September, Trask underwent a right radical nephrectomy, completely removing the right kidney and some surrounding tissue. The pathology report stated that the mass was clear-cell carcinoma, confirming an approximately forty-five-month delayed diagnosis of kidney cancer.

Trask filed a medical malpractice lawsuit on September 25, 2023. On November 30, he filed and served certificates of merit for expert witnesses under Iowa Code § 147.140. On May 24, 2024, we issued our opinion in *Miller v. Catholic Health Initiatives-Iowa Corp.*, 7 N.W.3d 367 (Iowa 2024), which held for the first time that certificate-of-merit affidavits must be signed under oath or under "penalty of perjury" to satisfy § 147.140. *Id.* at 376. On June 13, the defendants, citing *Miller*, filed a joint motion for summary judgment, seeking a dismissal with prejudice based on the noncompliant certificates. The motion was

timely filed under the trial scheduling order's dispositive motion deadline. On July 16, Trask filed a dismissal without prejudice of the lawsuit.

On November 22, Trask filed a new petition against the same defendants alleging identical causes of action. The petition invoked Iowa Code § 614.10, the "savings statute," arguing that the second action should be deemed a continuation of the first. The State of Iowa was dismissed as a defendant after filing an unresisted motion to dismiss. The remaining defendants filed pre-answer motions to dismiss, asserting that the savings statute did not apply and thus the action was barred by the statute of limitations.

The district court granted the motions to dismiss, holding that the savings statute did not apply because the initial lawsuit did not "fail" within the meaning of the statute since Trask could have resisted the summary judgment motion rather than dismissing the case. Alternatively, the district court held that the failure of the original action was due to Trask's own negligence in failing to properly prepare the certificates of merit. Trask appeals.

II.

Trask contends that the district court erred in dismissing the case. He argues that the savings statute in Iowa Code § 614.10 applies in this situation, making the second lawsuit a continuation of the original and preserving his claims as timely filed.

When ruling on a motion to dismiss, the court generally considers only the petition and matters subject to judicial notice. *Meade v. Christie*, 974 N.W.2d 770, 775 (Iowa 2022). In ruling on a motion to dismiss, we accept factual allegations as true, but not legal conclusions. *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 538 (Iowa 2022). Trask's petition in the second lawsuit includes a section addressing the savings statute's application and specifically

pleads that "[t]his action is subject to Iowa Code § 614.10's saving's provision." In ruling on the defendants' motion to dismiss, we will consider the filings from the original lawsuit referred to in the new petition. *See King v. State*, 818 N.W.2d 1, 6 n.1 (Iowa 2012) (stating that in ruling on a motion to dismiss for failure to state a claim, the court may consider documents referenced in the petition even if they were not attached).

A statute of limitations is a law that sets a time limit for filing a legal action. *Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 93 (Iowa 2002). The statute of limitations applicable here, Iowa Code § 614.1(9)(*a*), provides that causes of action for medical malpractice must be brought "within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of, the injury or death for which damages are sought." Trask claims to have first learned of the mass on his kidney after the MRI on July 26, 2021. The second lawsuit was filed on November 22, 2024. If the savings statute doesn't apply, the second lawsuit is indisputably barred by the two-year statute of limitations.

The savings statute, Iowa Code § 614.10, allows a second lawsuit to proceed as a continuation of a prior lawsuit in certain situations, even if the statute of limitations has expired. The statute states:

> If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall be held a continuation of the first.

Iowa Code § 614.10. Although "savings statutes are not ordinarily designed to swallow entirely the ordinary restrictions of a statute of limitation," they help "to strike a proper balance between the competing policies of providing a plaintiff with a meaningful opportunity to be heard while providing a defendant with the

certainty and stability afforded by a statute of limitations." *Furnald v. Hughes*, 804 N.W.2d 273, 276 (Iowa 2011).

In our most recent savings statute case, *Furnald v. Hughes*, we addressed the statute's "fails therein" language and whether a voluntary dismissal of a case could constitute failure for purposes of granting relief. *Id.* at 274. Our savings statute cases generally reveal a tension between voluntary dismissals and the requirement that a case must "fail" through no negligence of the plaintiff. In *Archer v. Chicago, B. & Q.R. Co.,* our first case on this issue, the plaintiff dismissed his original action because he doubted he would receive a fair trial in federal court. 22 N.W. 894, 895 (Iowa 1885). We held that the second lawsuit did not qualify under the savings statute because mere belief of unfairness was insufficient to establish failure in the action without facts indicating that dismissal was somehow compelled by the circumstances. *Id.* at 894–95. We reasoned that although "[a] voluntary dismissal under compulsion" may come within the savings statute, if a party voluntarily dismisses without making "some effort to prepare and try his action," the case has not "failed" within the meaning of the statute. *Id.* at 894–95.

We applied the same principle in *Pardey v. Town of Mechanicsville*, where a plaintiff dismissed her case after learning her star witness had been induced into intoxication on the day of trial. 83 N.W. 828, 828 (Iowa 1900). Because the plaintiff chose dismissal over a continuance, which would have allowed the witness time to sober up, we deemed the dismissal "voluntary, not compulsory" and thus evidence of "negligence in its prosecution." *Id.* at 829. Similarly, in *Ceprley v. Incorporated Town of Paton,* a plaintiff dismissed his case when faced with unexpected evidence. 95 N.W. 179, 180 (Iowa 1903). We again denied relief under the savings statute, holding that diligence required the plaintiff to use

"any other way open to him," such as a continuance to locate rebuttal witnesses, to avoid dismissing the action. *Id.*

In this case, the district court held that Trask failed to satisfy the savings statute because he could have resisted summary judgment, finding "no failure of the first action because there were other potential procedural options available." The district court also deemed Trask's failure to serve compliant certificates of merit "to be a matter . . . of [his] own negligence," further preventing application of the statute.

Trask argues that the district court erred on both points, claiming that he was not required to resist the summary judgment motions for the savings statute to apply and that the failure did not result from negligence. He points to our decision in *Miller* as rendering the certificates of merit in the original lawsuit noncompliant and leaving no viable path forward. Proving failure under the savings statute, he argues, does not require a plaintiff to pursue methods that have no meaningful chance of success.

Trask's argument finds support in our caselaw. In *Weisz v. Moore*, a plaintiff's lawyer received a telephone message from the presiding judge on a Wednesday afternoon stating that his client's case would be called for trial the next morning. 265 N.W. 606, 610 (Iowa 1936). The client lived 250 miles, and the lawyer 150 miles, from the place of trial. *Id.* Because the lawyer and client had to travel such a distance, the lawyer called the judge to ask for "a delay of the trial for a few days." *Id.* at 608. Because of other obligations, the judge responded that he couldn't delay the trial beyond the following day unless the defense counsel consented. *Id.* at 610. The defendants refused the request, and after another unsuccessful call with the judge to find an alternate date, the

plaintiff's lawyer voluntarily dismissed the case without prejudice. *Id.* When the plaintiff refiled his petition, the statute of limitations had expired. *Id.* at 607–08.

The district court in *Weisz* dismissed the second lawsuit as beyond the limitations period, rejecting the plaintiff's argument that the savings statute applied. *Id.* at 608. On appeal, the plaintiff argued that his calls with the judge and defense counsel made clear that filing a motion to continue would be ineffectual and that his voluntary dismissal was thus made "under compulsion." *Id.* at 609. We reversed, reasoning that filing a formal motion to continue was unnecessary under the circumstances. *Id.* at 610.

Trask contends that resisting summary judgment after *Miller* would have been a futile exercise. The petition alleges that our holding in *Miller* renders Trask's certificates of merit defective, which in turn triggers dismissal of the claims under § 147.140(6). Our court's post-*Miller* certificate-of-merit cases have cemented *Miller*'s result. In *Banwart v. Neurosurgery of North Iowa, P.C.*, we reaffirmed *Miller*'s interpretation of § 147.140, holding that a written affirmation did not substantially comply with the statute's requirements. 18 N.W.3d 267, 272–75 (Iowa 2025). We also rejected the Banwart plaintiffs' arguments that the defendants had waived the right to challenge the defective certificates because they engaged in years of discovery before moving to dismiss the case. *Id.* at 276. And more recently, in *Rarick v. Smidt*, ___ N.W.3d ___, 2026 WL 1441855 (Iowa May 22, 2026), we again relied on *Miller* to hold that a similar certificate failed to substantially comply with the statute's "affidavit" requirements. *Id.* at ___, 2026 WL 1441855, at *5–7.

As established in *Weisz*, a plaintiff is not required to exhaust futile procedural maneuvers to fall within the protection of the savings statute. A critical distinction exists regarding the viability of procedural options between

this case and those analyzed in *Furnald*. In *Archer*, *Pardey*, and *Ceprley*, a continuance was a viable remedy that could have cured underlying issues like a witness's intoxication or missing testimony; because those claims could be meaningfully pursued, they had not yet "failed." *See Archer*, 22 N.W. at 894–95; *Pardey*, 83 N.W. at 829; *Ceprley*, 95 N.W. at 180. By contrast, where the law leaves no viable path forward, a party acts under compulsion, and a voluntary dismissal satisfies the statute's failure requirement. *See Weisz*, 265 N.W. at 609–10. As *Weisz* confirms, nothing in the savings statute requires a plaintiff to pursue ineffectual legal maneuvers as a prerequisite for relief. *Id.* at 610.

The defendants argue that even if the initial claims failed, the savings statute categorically excludes the defective certificate issues that prompted the voluntary dismissal. In support, the defendants rely on our observation in *Furnald* that the savings statute is a tool to "prevent *minor* or *technical* mistakes from precluding a plaintiff from obtaining his day in court and having his claim decided on the merits." 804 N.W.2d at 276 (emphases added). Upon closer examination, however, this characterization was too narrow, focusing more on the facts we were addressing in *Furnald* than any actual restriction imposed by the statute's text. The plain language of the savings statute authorizes relief "for *any cause* except negligence in its prosecution," encompassing both minor technicalities and significant substantive errors alike. Iowa Code § 614.10 (emphasis added). However one might characterize a missing attestation on a certificate of merit, there is nothing in the savings statute's text that strictly limits its application to a particular species or magnitude of "failure."

The defendants further argue that the savings statute does not apply because Trask cannot prove that the failure was "for any cause except negligence in its prosecution." Iowa Code § 614.10. In their view, Trask's failure to ensure

that the certificates were properly sworn in the first lawsuit was negligent, and merely because no case had declared an improperly sworn certificate defective until *Miller* doesn't change the analysis. As they note, § 147.140 has always contained an affidavit requirement, and "*Miller* simply enforced the statutory requirement that had been in effect since [its] enactment in 2017," *Tarbox ex rel. S.K. v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, 13 N.W.3d 546, 570 n.5 (Iowa 2024) (Waterman, J., concurring). Because *Miller* didn't change anything, the defendants contend, the defective certificates were always the product of negligence and the lawsuit thus subject to dismissal even before we handed down *Miller.*

But even when a ruling establishes what a statute has "always" meant, it doesn't follow that a lawyer who previously read the language differently was negligent. "[A]n attorney is not liable for an error in judgment on points of new occurrence or of nice or doubtful construction or for a mistaken opinion on a point of law that has not been settled by a court of last resort and on which reasonable doubt may well be entertained by informed lawyers." *Martinson Mfg. Co. v. Seery*, 351 N.W.2d 772, 775 (Iowa 1984) (quoting 7 Am. Jur. 2d *Attorneys at Law* § 201 (1980)). Clairvoyance in predicting judicial outcomes is not a job requirement for lawyers. *Devine v. Wilson*, 373 N.W.2d 155, 158 (Iowa Ct. App. 1985) (en banc) ("An attorney is not required to predict future Supreme Court decisions which clarify the law."); *see also Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1244 (Ind. 2010) ("Given this lack of clarity as to the precise boundaries of [Indiana's medical malpractice statute's] application, it is not necessarily negligent to have failed to predict where the courts would come down on the application of the statute to a set of facts alleging negligence at the periphery of medical malpractice.").

Equating an ultimately rejected statutory interpretation with negligence would create an unfairly exacting standard for lawyers. Indeed, if every incorrect legal conclusion constituted negligence, then every overturned trial judge and every dissenting appellate judge would be negligent. The operative inquiry is not whether the lawyer's understanding was eventually endorsed by an appellate court, but whether that understanding was reasonable at the time it was formed. "It is the generally accepted rule that mere errors in judgment by a lawyer are not grounds for negligence, at least where the lawyer acts in good faith and exercises a reasonable degree of care, skill and diligence." *Baker v. Beal*, 225 N.W.2d 106, 112 (Iowa 1975).

In *Wilson v. Wright*, we addressed whether a lawyer's failure to timely file a petition—resulting from a misunderstanding of a recent statutory amendment—constituted negligence barring application of the savings statute. 189 N.W.2d 531, 532–33 (Iowa 1971). The lawyer had delivered a petition to the clerk's office on a Friday evening, but because the clerk did not make the required docket memorandum until the following Monday, the district court held that the petition was not "filed" on the date stated in the original notice. *Id.* at 532. In analyzing the negligence inquiry, we focused on whether the lawyer's interpretation of the filing requirements was reasonable under the circumstances. *Id.* at 533–34. We concluded that the lawyer was not negligent because his interpretation of the filing statute was a plausible interpretation of the new amendment. *Id.* at 533–34. Because the statute was susceptible to the interpretation that the filing date is the date of physical delivery—even if the filing is not considered complete until the clerk dockets it—we held that the lawyer's reading of the statute was "not so unreasonable as to constitute negligence." *Id.* at 534. We thus allowed the second lawsuit to proceed. *Id.*

An Iowa federal court reached a similar conclusion when deciding if a mistaken legal interpretation counts as "negligence" under Iowa's savings statute. In *Doe v. Hartz*, a plaintiff's original lawsuit was dismissed by the Eighth Circuit Court of Appeals after determining that her Violence Against Women Act (VAWA) claim—which served as the basis for federal jurisdiction—was unavailing. 52 F. Supp.2d 1027, 1035, 1043 (N.D. Iowa 1999). When the plaintiff refiled her remaining claims under the savings statute, the defendants argued that the claims were not "saved" because the initial dismissal resulted from the plaintiff's negligence in asserting the untenable VAWA claim. *Id.* at 1040–42. The district court rejected this argument, stating that the claim's adequacy "turned on close questions of statutory interpretation, or at a minimum, on a complex interaction of law and fact." *Id.* at 1043. It noted that the questions were difficult enough to split the appellate panel and cause the district court itself to originally reach a different conclusion. *Id.* "The fact that [her] assertion of a VAWA claim was later shown in the course of litigation to be incorrect," the court stated, "does not, without more, amount to negligence in prosecution." *Id.*

*Wilson* requires us to consider whether Trask acted reasonably when he filed the defective certificates of merit in the first lawsuit. Strong evidence suggests that the initial certificates were based on a reasonable, widely held understanding of § 147.140's requirements. Notably, the defendants did not move to dismiss based on the certificates' defects until after the *Miller* decision. This delay suggests that four separate sets of counsel (two sets for plaintiffs, two sets for defendants) initially viewed the certificates as compliant, or at least representing a reasonable interpretation of the statute's requirements. This delay also belies the defendants' claims in their appeal brief about the clarity or obviousness of the affidavit requirements.

What's more, the existence of similarly defective certificates in numerous lawsuits filed before *Miller* that were dismissed after *Miller*, *see, e.g.*, *Panek v. Iowa Methodist Med. Ctr.*, No. 24–1838, 2025 WL 3023008, at *1 (Iowa Ct. App. Oct. 29, 2025) (timely 2023 certificate, unsworn and without a jurat or "penalty of perjury" language); *Est. of Spieker v. Cath. Health Initiatives – Iowa, Corp.*, No. 24–1599, 2025 WL 2925143, at *1 (Iowa Ct. App. Oct. 15, 2025) (2021 certificate signed by the expert but neither sworn nor made under penalty of perjury); *Frank v. Hallman*, No. 24–0998, 2025 WL 2537920, at *1 (Iowa Ct. App. Sep. 4, 2025) (unsworn certificate under the 2020 statute); *McGonigle v. Finley Hosp.*, No. 24–1349, 2025 WL 2538778, at *2 (Iowa Ct. App. Sep. 4, 2025) (unsworn certificate, originally filed in a prior federal action), and the fact that district courts in both *Miller* and *Banwart* reached conclusions that were later reversed, *see Miller*, 7 N.W.3d at 370; *Banwart*, 18 N.W.3d at 275, to say nothing of our own court's disagreements about what constitutes "substantial compliance" under the statute's requirements, *see Rarick*, ___ N.W.3d at ___, ___, 2026 WL 1441855, at *12–20, *20–22 (three justices dissenting in two separate opinions); *Banwart*, 18 N.W.3d at 278–84 (two justices dissenting), all send strong signals that § 147.140's requirements were previously of "nice or doubtful construction." *Martinson Mfg. Co.*, 351 N.W.2d at 775. All in all, we find Trask's interpretation reasonable under the circumstances.

Because the defective certificates of merit in the first lawsuit established "failure" without the need for Trask to file a doomed resistance to the defendants' summary judgment motion in the wake of *Miller*, and because the first lawsuit's failure did not result from negligence in its prosecution, we hold that Trask has established the savings statute's application on these facts. As a result, we

conclude that the savings statute applies and that the district court erred in dismissing his second lawsuit as untimely.

III.

For these reasons, we reverse the district court ruling dismissing the case and remand for further proceedings.

**Reversed and Remanded.**