# IN THE COURT OF APPEALS OF IOWA

No. 13-0755
Filed July 16, 2014


**RUSS HOTCHKISS and DARUSS ENTERPRISES, INC., d/b/a PROSHIELD FIRE PROTECTION, an Iowa Corporation,**
Plaintiffs-Appellants,

**vs.**

**INTERNATIONAL PROFIT ASSOCIATES, INC., n/k/a INTERNATIONAL SERVICES, INC., an Illinois Corporation, INTERNATIONAL TAX ADVISORS, INC., n/k/a STRATEGIC TAX ADVISORS, INC., a Nevada Corporation, and ACCOUNTANCY ASSOCIATES, LLC, n/k/a VALUATION ADVISORY SERVICES, LLC, an Illinois Limited Liability Co.,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.


Russ Hotchkiss appeals the district court's grant of summary judgment in favor of International Profit Associates. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


Susan M. Hess of Hammer, Simon & Jensen, P.C., Dubuque, for appellants.

James R. Hellman and Erin P. Lyons of Dutton, Braun, Staack & Hellman, Waterloo, for appellees.


Heard by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

Russ Hotchkiss appeals the district court's grant of summary judgment in favor of International Profit Associates (IPA). Hotchkiss asserts the district court improperly concluded his claims were time barred due to the statute of limitations and that the savings statute did not apply. Hotchkiss further argues the court erred when it held there was no issue of material fact with regard to the merits of any of his claims.

We conclude the district court correctly found Hotchkiss's claim based on Iowa Code section 706A (2011) was barred due to the statute of limitations, and the savings clause in Iowa Code section 614.10 did not prevent this claim from being time barred. However, the breach of contract claim was based on a written contract, and therefore the ten-year statute of limitations applied. Additionally, the equitable fraud and negligent misrepresentation causes of action did not begin to accrue until Hotchkiss discovered the injury, that is, August 29, 2008, and therefore his September 11, 2012 petition was filed within the five-year statute of limitations. Moreover, there is an issue of material fact as to whether IPA breached the written contract. There is also an issue of material fact with respect to the negligent misrepresentation claim, though the district court correctly concluded Hotchkiss's breach of warranty and equitable fraud claims should fail as a matter of law. Consequently, we affirm the district court's grant of summary judgment regarding the breach of warranty, equitable fraud, and the 706A causes of action, but reverse the grant of summary judgment as to the breach of contract and negligent misrepresentation claims.

**I. Factual and Procedural Background**

Hotchkiss owns Daruss Enterprises, Inc., d/b/a Proshield Fire Protection.[1] On March 7, 2007, Hotchkiss, on behalf of his company, entered into a contract with IPA for financial consulting services. Pursuant to the agreement, IPA was required to provide consulting services to maximize the business's profits. Included in the document entitled "Agreement for Services (IPA)" were three independent agreements with Accountancy Associates, International Tax Advisors, and International Profit Associates.[2] Also included in the contract was a document entitled "IPA Assurance," which was signed by Hotchkiss and IPA. This portion of the contract included the following language:

> IPA will, upon satisfactory completion of the consulting engagement, assure to Pro Shield Fire Protection, Inc. ("Client") the realization of a return, through a combination of cost savings and profit enhancements, in excess of 3 (three) times the investment incurred for consulting hours billed, during the 12 months following the successful completion of the project.

Additionally, the contract contained a denial of any express or implied warranties, as well as an integration clause. The contract further required Hotchkiss to submit monthly Financial and Operational Summary Reports to IPA's Client Relations Department. The number of reports ultimately submitted by Hotchkiss is disputed.

The relationship between Hotchkiss and IPA soon deteriorated. On June 13, 2007, Hotchkiss wrote to IPA to catalog his "frustrations and dissatisfaction" with regard to IPA's services. Included in the letter was the following statement:

---

[1] The present action includes Hotchkiss individually and his company, referred to collectively as "Hotchkiss."

[2] The appellees in this case will be referred to collectively as "IPA."

> I am extremely irate because I have paid you people in excess of $100,000 and do not feel I have gotten services up to $1000. Now, I have nearly $160,000 on my American Express Gold Card and I cannot pay it . . . . You people sure do not look after your clients. If I did business in that manner, I would be out of business. You may have just finished me off. Right now I just want my money back.

On July 30, 2007, Hotchkiss wrote another email stating: "I WANT MY MONEY BACK. YOU PEOPLE HAVE SCAMMED ME. HOW HAVE YOU PEOPLE HELPED ME? I WANT MY MONEY BACK! I WANT MY MONEY BACK!! I WANT MY MONEY BACK!!!"

IPA responded to Hotchkiss's concerns by sending out a new representative, Bill Sweigard, to correct the formulas with which Hotchkiss was having difficulty implementing and utilizing. At the end of the project, Hotchkiss expressed satisfaction with Sweigard's work. Additionally, between November and December 2007, several emails were exchanged between IPA and Hotchkiss concerning debt financing. IPA concluded its consulting work on August 29, 2007. Pursuant to the terms of the Assurance Agreement, Hotchkiss could expect a return on his investment twelve months later, that is, August 29, 2008.

On October 14, 2008, Hotchkiss sent a letter to IPA demanding a refund of his money. IPA did not respond. On June 3, 2009, Hotchkiss filed suit against IPA.[3] Hotchkiss moved to amend the petition to add parties as well as an additional cause of action, which the district court denied. Consequently,

---

[3] IPA filed an interlocutory appeal contesting the district court's refusal to enforce a forum selection clause specifying Illinois, rather than Iowa, as the state possessing exclusive jurisdiction over any legal action arising from the contract. Our court affirmed the district court's decision on April 13, 2011. *See Hotchkiss v. Int'l Profit Assocs.*, No. 09-1632 2011 WL 1378926, at *3 (Iowa Ct. App. April 13, 2011).

Hotchkiss dismissed his original petition without prejudice. On September 11, 2012, he filed his second petition that included International Tax Advisors and Accountancy Associates as defendants. The second petition alleged the same claims, though it added one additional cause of action based on Iowa Code section 706A.

IPA moved for summary judgment, and Hotchkiss resisted. A hearing was held on January 4, 2013. On April 9, 2013, the district court issued a ruling granting IPA's motion for summary judgment. In its order, the court concluded the breach of contract claim was based on an oral agreement, and therefore the statute of limitations found in Iowa Code section 614.1(5) was five years. In particular, it found the written contract contained no "guaranteed profitability" and "no money-back guarantee." It therefore dismissed the breach of contract claim based on the statute of limitations. It also dismissed the equitable fraud, negligent misrepresentation, and 706A claims as filed beyond the statute of limitations, concluding the causes of action began to accrue no later than July 30, 2007, the date of Hotchkiss's second email expressing dissatisfaction and demanding his money back. It also dismissed the equitable fraud, negligent misrepresentation, breach of contract, and breach of warranty claims on the merits, concluding there was no genuine issue of material fact with regard to these claims. Hotchkiss appeals.

## II. Standard of Review

We review rulings on a motion for summary judgment for correction of errors at law. *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). Summary judgment is appropriate when the entire record demonstrates

that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* We review the evidence in the light most favorable to the nonmoving party. *Id.*

## III. Statute of Limitations

Hotchkiss first contends the district court erred in concluding all of his claims were time barred. Iowa Code section 614.1 governs the statute of limitations for various causes of action. Claims based on unwritten contracts, equitable causes of action, "and all other actions not otherwise provided for in this respect" must be brought within five years from the time they accrue. Iowa Code § 614.1(4).[4] Those founded on written contracts must be brought within ten years. *Id.* § 614.1(5). A claim brought pursuant to a statute has a two-year statute of limitations, provided the statute itself does not specify a time limitation. *Id.* § 614.1(2).[5]

### A. 706A Claim

Iowa Code section 706A proscribes the act of receiving income or property as a result of fraud. The statute allows "an aggrieved person [to] institute civil proceedings against any person in district court seeking relief from conduct constituting a violation of this chapter." *Id.* § 706A.3(1). This section does not contain a specified statute of limitations for the civil cause of action.

---

[4] This paragraph states:
> Unwritten contracts—injuries to property—fraud—other actions. Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years, except as provided by subsections 8 and 10.

Iowa Code § 614.1(4).

[5] This paragraph states: "Those [causes of action] founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty, within two years." Iowa Code § 614.1(2).

Here, Hotchkiss's petition alleged IPA benefitted financially due to fraudulent activity, specifically, "false or fraudulent pretenses, representations, promises, or material omissions" in violation of chapter 706A.

In concluding Hotchkiss's 706A claim was time barred, the district court stated:

> The statute of limitation for causes of action under Iowa Code section 706A commences upon the "(d) discovery of the injury, not discovery of the other elements of the claim." *Bendzak v. Midland Nat. Life Ins. Co.*, 440 F. Supp. 2d 970, 980 (S.D. Iowa 2006), quoting *Rotella v. Wood*, 528 U.S. 549, 553 (2000). The Court finds the plaintiffs discovered the injury as early as June 13, 2007, and unequivocally by July 30, 2007. Therefore, applying a five-year statute of limitations, the plaintiffs' action is time barred. Furthermore, the Court concludes based upon the citations and arguments submitted by the defendants, given the statutory nature of the plaintiffs' remedies sought, a two-year statute of limitations is applicable. As such, the Iowa Code section 706A claim is time barred.

We agree with the district court that Hotchkiss's cause of action arises from a statute, given section 706A specifically allows for a civil remedy, and Hotchkiss's petition asserted IPA's conduct violated this chapter. Consequently, the statute of limitations for actions based on a statute—that is, a period of two years—applies, and Hotchkiss's cause of action is time barred. *See* Iowa Code § 614.1(2); *see also Venard v. Winter*, 524 N.W.2d 163, 165 (Iowa 1994) ("The actual nature of the action determines the proper statute of limitations. This determination turns on the nature of the right sued upon and not on the elements of relief sought for the claim."). Therefore, the district court properly granted summary judgment with respect to Hotchkiss's 706A claim.

**B. Equitable Fraud and Negligent Misrepresentation Claims**

Iowa Code section 614.1(4) requires claims of fraud, actions based in equity, and all other causes of actions not specifically provided for in this chapter to be brought within five years of the time the cause of action begins to accrue. A claim starts to accrue at the point the plaintiff discovers "the fact of the injury and its cause." *Hallett Const. Co. v. Meister*, 713 N.W.2d 225, 231 (Iowa 2006). Both equitable fraud and negligent misrepresentation are subject to the statute of limitations found in Iowa Code section 614.1(4), that is, five years. *See id.* (noting claims of fraud are subject to the five-year statute of limitations); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 383 (Iowa Ct. App. 1989) (noting negligent misrepresentation is subject to a five-year statute of limitations).

Here, the terms of the agreement stated: "[U]pon satisfactory completion of the consulting engagement, [IPA] assure[s] to Pro Shield Fire Protection, Inc. ("Client") the realization of a return . . . in excess of 3 (three) times the investment incurred for consulting hours billed, during the 12 months following the successful completion of the project." According to Hotchkiss's petition, he claims he was damaged based on this contract term, that is, that his business would realize a return on its investment from IPA's work twelve months after the work's completion. The petition is also based on the alleged oral money-back guarantee as conveyed to Hotchkiss by IPA agents. Specifically, under the heading of negligent misrepresentation, the petition states:

> Defendants, through their agents, made certain representations to Plaintiffs regarding guarantees on behalf of their company.

> In reliance on those representations Plaintiffs paid substantial sums to Defendant.
>
> Defendants' representations were false and Plaintiff suffered damages in excess of the jurisdictional limitations as a result of his reliance on those representations.

With regard to the equitable fraud claim, the petition alleges:

> Defendants, through their agents, and acting in concert with each other, made certain representations to Plaintiffs regarding guarantees on behalf of their company, including but not limited to increasing profitability of Plaintiff company.
>
> The representations were material to Plaintiffs entering into the contract.
>
> In reliance on those representations Plaintiffs paid substantial sums to Defendant and expended substantial time and effort to comply with the contract terms.
>
> Defendants' representations were false and Plaintiffs suffered damages in excess of the jurisdictional limitations as a result of his reliance on those representations.
>
> Plaintiffs did not realize the profitability and Defendants refused to refund the money.

Pursuant to the contract and as conveyed by IPA agents, Hotchkiss could not have discovered the fact of an injury until one year after IPA concluded its work—August 29, 2008. *See Hallett Const. Co.*, 713 N.W.2d at 231. The district court found Hotchkiss's June 13, 2007 and July 30, 2007 emails, in which he demanded his money back, was the date Hotchkiss discovered his injury. However, in response to those emails, IPA was able to take corrective action, thus restoring the relationship between the parties and allowing the agreement to run its full twelve-month time period, which was necessary to measure the return on Hotchkiss's investment.

Thus, regardless of whether the claims are based on the oral guarantee or the written Assurance Agreement, Hotchkiss was only able to discover the injury after IPA allegedly breached the written contract and Hotchkiss did not realize a

return on his investment or, pursuant to the alleged oral representation, receive his money back. Hotchkiss could only discover the absence of these events after IPA concluded its work and the requisite twelve months passed. Only then could IPA's performance be measured and the determination made as to whether IPA breached the agreement.

Hotchkiss's petition was filed on September 11, 2012. Therefore, the petition was brought within the requisite five years after these causes of action began to accrue. Consequently, the district court erred in concluding the statute of limitations barred both the negligent misrepresentation and equitable fraud claims.

### C. Breach of Contract Claim

Hotchkiss next argues the court incorrectly concluded his breach of contract claim was based on an unwritten contract, and therefore erroneously applied the five-year statute of limitations, rather than the ten-year time period found in Iowa Code section 614.1(5).[6]

Claims founded on written contracts must be brought within ten years. *Id.* In order for an action to be founded on a written contract, the essential facts establishing liability of the defendant must be shown by a writing, without resort to parole evidence. *Matherly v. Hanson*, 359 N.W.2d 450, 454 (Iowa 1984). With regard to when the statute of limitations begins to run, absent specific

---

[6] IPA contends Hotchkiss did not preserve error on this claim because it was not presented in the district court. However, the basis of the motion for summary judgment regarding the breach of contract claim, resisted by Hotchkiss, was whether the statute of limitations barred the current suit. The district court clearly ruled on this issue. Therefore, error was preserved. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012).

language in the contract, we apply traditional rules regarding commencement of the contract statute of limitations to make this determination. The general rule is that the contract statute of limitations commences upon the date the contract is breached. *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784 (Iowa 2000).

In concluding Hotchkiss's cause of action was time barred, the district court stated:

> The Court finds that the applicable statute of limitations in this matter is five years. Although a written contract was entered into by the parties in March of 2007, the plaintiff's breach of contract cause of action does not arise out of the actual writings, but stems from an alleged oral exchange between Hotchkiss and an IPA representative, Greg Helmers.
> . . . .
> The Court relies upon the citations provided that the five-year statute of limitations pursuant to Iowa Code section 614.1(4) for oral contracts must apply. Although a written contract exists suggesting the ten-year statute of limitations of Iowa Code section 614.1(5) applies, the essential terms of the alleged contract providing a "money-back guarantee" must be implied or presumed from parol evidence of the parties' conduct. Therefore, the contract is subject to the limitations statute applicable to oral rather than written contracts and the five-year limitation controls.

Hotchkiss's cause of action set forth in his petition alleges:

> On March 6, 2007 Defendants approached Plaintiffs at their place of business in Blackhawk County, Iowa, and presented a high-pressure sales pitch, which included a written contract on a form prepared by Defendants.
> On March 6, 2007 for valuable consideration the Defendants entered into the written contract with Plaintiffs, copy of which is attached hereto as Exhibit A.
> Plaintiffs performed all requirements under the contract.
> The Defendants have not performed the agreement on their part in that Defendants failed to deliver the guaranteed profitability.
> Plaintiffs demanded that the Defendants refund their money.
> Defendants have refused to do so.
> As a result of this breach of the agreement by Defendants, the Plaintiffs were damaged in an amount which exceeds the jurisdictional limitation.

WHEREFORE, Plaintiffs ask for the contract to be rescinded and award to Plaintiffs all sums paid under the contract to date, along with consequential damages to Plaintiffs resulting from the false representations made to them by Defendants.

The pertinent sections of the contract relied upon by Hotchkiss to establish his breach of contract claim state:

It is expressly agreed that this printed document embodies the entire agreement of the parties in relation to the subject matter of services to be rendered; and that no other understanding or agreement, verbal or otherwise, exists between the parties, except as herein expressly set forth.

. . . .

IPA will, upon satisfactory completion of the consulting engagement, assure to Pro Shield Fire Protection, Inc. ("Client") the realization of a return, through a combination of cost savings and profit enhancements, in excess of 3 (three) times the investment incurred for consulting hours billed, during the 12 months following the successful completion of the project.

Early detection of variance in projected profits, and effecting changes designed to bring the identified variance back into compliance, is instrumental in assuring achievement of profitability goals. To this end, it is essential that Client provide a timely, monthly Financial and Operational Summary Report to the Client Relations Department for review during the year period, and such other reports as may be determined during the course of the project.

Based on these facts, we disagree with the district court that Hotchkiss's breach of contract claim relies primarily on the oral exchange between Hotchkiss and an IPA representative. Hotchkiss's petition states expressly that "[t]he Defendants have not performed the agreement on their part in that Defendants failed to deliver the guaranteed profitability." The basis for this alleged breach can be found in the written contract under the "IPA Assurance" agreement, which states that IPA promises "the realization of a return, through a combination of cost savings and profit enhancements, in excess of 3 (three) times the investment incurred . . . ." Regardless of any alleged oral promise, liability here

can be established by a writing, given this assurance that establishes "an obligation or liability to do . . . something." *Matherly*, 359 N.W.2d at 454.

IPA argues that, because Hotchkiss concedes the Assurance Agreement does not include a money-back guarantee, there is no written contract provision governing IPA's liability. However, the petition does not allege the breach of a money-back guarantee; rather, it uses the term "guaranteed profitability," which reasonably can be interpreted as a promise inherent in the Assurance Agreement. The failure of IPA to return Hotchkiss's money was not alleged as the breach, but, rather, was the remedy Hotchkiss sought upon the breach. Therefore, the essential facts governing IPA's liability can be found in the written contract, for which the applicable statute of limitations is ten years. *See* Iowa Code § 614.1(5); *see also* 51 Am. Jur. 2d, Limitation of Actions, § 117 (2012) (noting that the statute of limitations with respect to unwritten contracts only applies when it is necessary to resort to parol evidence to establish the essential terms of the contract).

Hotchkiss's petition was filed on September 11, 2012. With the claim beginning to accrue on the date the contract was allegedly breached—August 29, 2008, twelve months after IPA completed its work—the petition was filed within the applicable ten-year time period. Consequently, Hotchkiss's claim is not time barred, and it cannot be disposed of on statute-of-limitations grounds. We therefore reverse this portion of the district court's summary judgment decision.

**IV. Savings Clause**

As an alternative argument, Hotchkiss asserts the savings clause applies to all issues, and therefore his claims were brought within the applicable time period.[7] He argues the voluntary dismissal of his original petition constituted a continuation of the first petition pursuant to Iowa Code section 614.10, such that his claims are not barred by the statute of limitations.

The savings clause found in Iowa Code section 614.10 states: "If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first." Our supreme court has interpreted the phrase "negligence in its prosecution" to include most types of voluntary dismissals. Specifically, the court has held: "The *Archer–Pardey–Ceprley* line of cases stands for the proposition that for a voluntary dismissal to be within the scope of the term 'fails' under the savings statute, there must be compulsion to the extent that a plaintiff's entire underlying claim has been, for all practical purposes, defeated." *Furnald v. Hughes*, 804 N.W.2d 273, 282 (Iowa 2011).

Here, Hotchkiss voluntarily dismissed his petition as a result of the district court's denial of his motion to amend the pleadings. This was not an action in which Hotchkiss was forced to engage due to circumstances beyond his control. *See id.* at 283–84 (holding the fact that plaintiff voluntarily dismissed his original petition precluded the application of the savings statute to his second petition,

---

[7] Because we conclude the breach of contract, equitable fraud, and negligent misrepresentation claims were timely filed, we address this claim only as it pertains to the chapter 706A allegation.

and thus his claims were time barred).  Therefore, Hotchkiss's claim did not "fail" within the meaning of Iowa Code section 614.10, and the savings statute did not prevent Hotchkiss's 706A claim from being barred by the statute of limitations.

**V. Summary Judgment on the Merits**

Hotchkiss further claims the district court erred in granting summary judgment on the merits because there is an issue of material fact with regard to his claims of breach of contract, equitable fraud, negligent misrepresentation, and breach of warranty.  Because we concluded the statute of limitations did not bar any of these claims, we will address Hotchkiss's argument that there is an issue of material fact with respect to each of these claims.

**A.  Breach of Contract**

To succeed on a breach of contract claim, the plaintiff must show:

(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [the plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.  A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (internal citations omitted).  Conditions precedent must be satisfied "before there is a breach of contract duty."  *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa Ct. App. 1979) (internal citation omitted).  In deciding whether a condition precedent has been satisfied, only "where the facts are not in dispute and the inferences are certain" can summary judgment be granted.  *Met-Coil Sys. Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 656 (Iowa 1994); *see also Grinnell Mut. Reinsurance Co. v. Jungling*, 654 N.W.2d 530, 535 (Iowa 2002) ("No fact

question arises if the only conflict concerns legal consequences flowing from undisputed facts.").

In granting summary judgment, the district court stated:

> The contract specifically requires performance on the part of the plaintiffs to provide timely monthly Financial and Operational Summary Reports to the Client Relations Department of IPA for review during the one-year period after the completion of IPA's consulting project . . . . The defendants allege Hotchkiss never submitted a timely Financial and Operational Summary Report to the Client Relations Department. Although a factual question may exist in that Hotchkiss never submitted the said reports to the IPA's Client Relations Department, but submitted one or two such reports to Mr. Sweigard. Whether he submitted zero reports or at most two reports to Mr. Sweigard, there is no genuine issue of material fact suggesting Hotchkiss submitted the requisite twelve or one-year's worth of reports to IPA's Client Relations Department. In the absence of a genuine issue of material fact, the defendants are entitled to summary judgment as a matter of law on the breach of contract issue.

In reaching this conclusion, it appears the district court assumed the submission of the Financial and Operational Summary Reports was a condition precedent to IPA's completion of its duties under the contract, specifically the Assurance Agreement. However, the clause states:

> Early detection of variance in projected profits, and affecting changes designed to bring the identified variance back into compliance, is instrumental in assuring achievement of profitability goals. To this end, it is essential that Client provide a timely, monthly Financial and Operational Summary Report to the Client Relations Department for review during the year period, and such other reports as may be determined during the course of the project.

This clause is not definitively phrased as a condition precedent to IPA's performance under the contract. Moreover, "[a] determination that a condition precedent exists depends not on the particular form of words used, but upon the intention of the parties gathered from the language of the entire instrument."

*Mosebach*, 282 N.W.2d at 759. It is not clear from this clause or from the contract as a whole that the submission of Financial and Operational Summary Reports is a condition precedent to IPA's performance. Therefore, there is an issue of material fact with regard to whether this clause is a condition precedent Hotchkiss must satisfy before he can establish a breach of contract claim.

Additionally, even if this clause is determined to be a condition precedent to IPA's assurance of a profit return, we do not agree the record definitively established Hotchkiss did not at least substantially comply with this term. The parties dispute the number of reports submitted by Hotchkiss. IPA relies on Hotchkiss's deposition as proof Hotchkiss did not comply with this clause; however, this is the exchange that took place:

> Q: And you're saying [the report submitted in discovery is] not a report sent to the Client Relations Department at IPA? A: I'm not saying we didn't send it. I don't remember it. I even told my attorney I don't remember this particular report.
> . . . .
> Q: Have you been able to locate any other documents that are Financial and Operational Summary Reports that you submitted to IPA's Client Relations Department in the 12 months following the completion of the consulting engagement? A: I would have to look. I do remember submitting some to Bill, but that's it.
> . . . .
> Q: You're supposed to submit them to the Client Relations Department. A: You do not understand me.
> Q: Did you do that? A: I couldn't.
> Q: You couldn't? Why not? A: John's reports would not work. His formulas didn't work.
> Q: Did they work after Mr. Sweigard came out? A: They never worked. Once Bill got there, things were different, yes, yes.
> Q: Well, did you produce any of those reports to the Client Relations Department after Mr. Sweigard was at your place of business? A: Not to Client Relations.

The burden of proof to show there is no issue of material fact is on IPA, and all facts are taken in the light most favorable to Hotchkiss. *See Stevens*, 728

N.W.2d at 827. Given this standard, the exchange on which IPA relies does not definitively establish Hotchkiss did not substantially comply with a condition precedent, the non-performance of which would excuse IPA from its obligations under the contract. Consequently, there is an issue of material fact as to whether IPA breached the contract, and the district court erred in granting summary judgment on the merits of this claim.

### B. Breach of Warranty

To establish a breach of warranty, the plaintiff must show "the infraction of an express or implied agreement as to the title, quality, content or condition of a thing sold." *Dailey v. Holiday Distrib. Corp.*, 151 N.W.2d 477, 482 (Iowa 1967). Here, however, each separately signed agreement contained a clause stating "it is understood and agreed that no express or implied warranty of any general or specific results shall apply to the work done under this agreement." Moreover, the contract contained an integration clause, which prevents any parol evidence from being introduced to establish the existence of an oral warranty. *See Whalen v. Connelly*, 545 N.W.2d 284, 290 (Iowa 1996). Given the contract expressly states there are no warranties to breach, no issue of material fact exists as to whether Hotchkiss can succeed on his breach of warranty claim. We therefore conclude the district court properly granted summary judgment on the merits with respect to this claim.

### C. Negligent Misrepresentation

To succeed on a claim of negligent misrepresentation, the plaintiff must show the defendant:

> [I]n the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, [and] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, [when the defendant] fails to exercise reasonable care or competence in obtaining or communicating the information.

*Van Sickle Const. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 690 (Iowa 2010) (quoting Restatement (Second) of Torts § 552, at 126–27 (1977)).

Viewing the facts in the light most favorable to Hotchkiss, there is an issue of material fact as to whether Hotchkiss could succeed on his negligent misrepresentation claim. Hotchkiss asserts an IPA representative stated he could get his money back if IPA did not deliver the guaranteed profitability contained in the written contract. While the district court concluded Hotchkiss could not rely on this oral representation as a matter of law, "the decision whether or not reliance by a plaintiff is justified is one for the fact finder to resolve." *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 739 (Iowa 2009).

Moreover, the terms of the contract state Hotchkiss should be able to realize a return on his investment. This, too, could be considered "false information for the guidance of others" such that Hotchkiss was justified in relying on the statement when entering into the contract, and as a result suffered pecuniary losses. *See Van Sickle Const. Co.*, 783 N.W.2d at 690. Consequently, the district court erred in concluding Hotchkiss's negligent misrepresentation claim failed as a matter of law.

### D. Equitable Fraud

To establish a claim of equitable fraud, the plaintiff must prove by clear and convincing evidence "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damage." *Morton v. Underwriters Adjusting Co.*, 501 N.W.2d 72, 73 (Iowa Ct. App. 1993). A bare allegation that a defendant made a false statement on which the plaintiff relied, without more, cannot establish a claim of equitable fraud. *Grefe v. Ross*, 231 N.W.2d 863, 867 (Iowa 1975) ("A false statement innocently but mistakenly made will not establish intent to defraud, but, when recklessly asserted, it will imply an intent to defraud.").

Even when viewing the facts in the light most favorable to Hotchkiss, he is unable to establish either scienter or intent to deceive. He alleges no facts, either in his petition or elsewhere, which would establish IPA had "actual knowledge of the falsity of [its] representations [or spoke] in reckless disregard of whether [its] representations [were] true or false*." Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984). No deposition, interrogatory, or other evidence shows IPA or an IPA representative possessed the requisite intent or reckless disregard of the truth regarding its statements. Rather, Hotchkiss simply asserts he relied on IPA's statement he would either get his money back or realize a three-fold return on his investment, without alleging intent or reckless disregard on the part of IPA. Consequently, the district court properly concluded Hotchkiss's equitable fraud claim fails as a matter of law.

Having considered Hotchkiss's arguments, we affirm the district court's grant of summary judgment with respect to Hotchkiss's breach of warranty,

equitable fraud, and 706A claims, but reverse the grant of summary judgment regarding the breach of contract and negligent misrepresentation causes of action.  We remand the case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**